EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:                          |                   |
|                                 | 2017 TSPR 55      |
| Grimaldi Maldonado Maldonado    | 197 DPR _____     |

Número del Caso: AB-2014-70


Fecha: 4 de abril de 2017


Abogado de la Promovente:

        Por derecho propio


Oficina de Inspección de Notarías:

        Lcdo. Manuel E. Avila de Jesús
        Director



Materia: Conducta Profesional – La suspensión de la notaría será efectiva una vez advenga final y firme la sentencia conforme la Regla 45 del Reglamento del Tribunal Supremo sobre reconsideración.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Grimaldi Maldonado Maldonado        AB-2014-070

TS-9806

PER CURIAM

En San Juan, Puerto Rico, a 4 de abril de 2017.

Tenemos nuevamente la obligación de disciplinar a un abogado-notario por conducta antiética e incumplimiento con la Ley Notarial. Examinadas las circunstancias particulares de este caso, concluimos que la conducta desplegada por el letrado requiere que lo suspendamos del ejercicio de la notaría por el término de tres meses.

I

El Lcdo. Grimaldi Maldonado Maldonado (licenciado Maldonado Maldonado o letrado) fue admitido al ejercicio de la abogacía el 25 de junio de 1991 y al ejercicio de la notaría el 2 de agosto de 1991. El 4 de marzo de 2014, la Sra. Carmen Rosa Rivera (quejosa) presentó una queja contra el letrado ante la Oficina

de Inspección de Notarías (ODIN). Alegó que el 13 de agosto de 2007 pagó al licenciado Maldonado Maldonado la cantidad de $600 para que presentara la Escritura Pública Núm. 54A de *Liquidación de Sociedad Legal de Gananciales* (Escritura Núm. 54A) en el Registro de la Propiedad. Adujo que en mayo de 2013 decidió vender una propiedad que le fue cedida mediante la referida escritura, lo cual notificó al licenciado Maldonado Maldonado, pero que este último tardó hasta agosto de ese año para presentar el instrumento público en el Registro de la Propiedad. Como evidencia de sus alegaciones, entre otras cosas, acompañó la queja con copia del asiento de presentación. Asimismo, la quejosa arguyó que había pagado $300 al licenciado Maldonado Maldonado como parte de sus honorarios, y que un estudio de título que se había realizado de su propiedad en el 2013 no era válido.[1]

Tras varios incidentes procesales, el 20 de octubre de 2015, el letrado contestó la queja. Alegó que los $600 correspondían a los honorarios que cobró por el otorgamiento de la Escritura Núm. 54A; y que los $300 correspondían a un pago parcial en concepto de honorarios pendientes por el caso de divorcio por consentimiento mutuo entre la quejosa y el Sr. Rubén García Salgado, proceso que dio origen posteriormente al otorgamiento de la Escritura Núm. 54A.[2] Adujo, además, que la tardanza en presentar el instrumento

---

[1] La quejosa hizo varias alegaciones en la queja sobre los pagos realizados al licenciado Maldonado Maldonado por el estudio de título. Particularmente reclamó la devolución de $660. Sin embargo, un examen del expediente demuestra que la quejosa confundió la razón por la cual realizó algunos pagos. Véanse los Anejos VI y VIII en el *Informe*.
[2] Anejo II en el *Informe*.

público se debió a que ese tipo de negocio jurídico requería el correspondiente "relevo de donación del Departamento de Hacienda".[3] Arguyó que había notificado a la quejosa en cuanto a la necesidad de preparar una planilla de donaciones y anejar una certificación negativa de deuda de ASUME, la certificación de no deuda del Centro de Recaudación de Ingresos Municipales (CRIM) y la certificación de no deuda del Departamento de Hacienda, así como otros documentos para poder presentar la Escritura Núm. 54A al Registro de la Propiedad. A pesar de reconocer que nunca se unieron todos los documentos complementarios a la escritura pública, el 10 de enero de 2014 el letrado la presentó en el Registro de la Propiedad.[4] Ahora bien, reconoció desconocer si la quejosa había completado el mencionado trámite sobre la planilla de donación o si se había expedido el correspondiente relevo de donación.[5]

Posteriormente, como parte del proceso de investigación de la queja, la ODIN notificó al licenciado Maldonado Maldonado sobre la necesidad de que presentara cierta información.[6] Al respecto, el letrado presentó varios documentos: (1) copia certificada de la Escritura Núm. 54A de 13 de agosto de 2007, (2) la petición de divorcio por consentimiento mutuo, (3) la sentencia de divorcio, (4) una solicitud de cambio de dueño y exoneración contributiva del CRIM, (5) un estudio de título de 8 de enero de 2014, (6) la

---

[3] Íd.
[4] Véase Anejo II y IX en el *Informe*.
[5] Anejo IV en el *Informe*.
[6] Véase Anejos III-IV en el *Informe*.

minuta de presentación de la escritura al Registro de la Propiedad y (7) un documento sobre el estado de presentación de la Escritura Núm. 54A. Además, informó que el contrato entre éste y la quejosa no constaba por escrito.

Surge de la Escritura Núm. 54A que el licenciado Maldonado Maldonado consignó las advertencias siguientes:

---(A) Sobre los deberes y consecuencias fiscales de este negocio jurídico.------------------------

---**(B) La deseabilidad de que esta escritura sea presentada en el Registro de la Propiedad lo más pronto posible y las posibles consecuencias de así no hacerlo.**-----------------------------------

---(C) Que para inscribir la presente Escritura necesitan como documento complementario la Copia Certificada de la Sentencia de Divorcio de los comparecientes.-----------------------------

---(D) Sobre el pago de los derechos correspondientes de inscripción; así como el deber de tramitar rápidamente el correspondiente traspaso en los registros sobre tributación de propiedades del Departamento de Hacienda; el traspaso de titularidad en el Centro de Recaudación de Impuestos Municipales (C.R.I.M.); las consecuencias del envío de la Planilla Informativa sobre traspaso de bienes inmuebles al Departamento de Hacienda, que lo transmitentes han de certificar bajo su firma y responsabilidad; y el significado de la obligación de evicción.------

---(E) De los derechos de terceros que puedan emanar del contenido de este instrumento público.-

---(F) El deber de informar al Departamento de Hacienda en su planilla de contribución sobre ingresos la ganancia que haya generado este negocio.-----------------------------------

---**(G) El Notario Autorizante le ha advertido a las partes que la presente escritura se ha otorgado prescindiendo de un estudio de título debido al conocimiento que tienen las partes de la situación registral de la propiedad, siendo así los comparecientes expresamente relevan al Notario de cualquier responsabilidad por cargas y/o gravámenes de cualquier índole que pudieran aparecer en el Registro.**----------------------[7]

---

[7] Anejo VII en el *Informe.* (Énfasis suplido).

El 13 de enero de 2016, la ODIN remitió el *Informe* correspondiente con la prueba provista por las partes. En este, la ODIN concluyó lo siguiente:

> En suma, colegimos que el Querellado actuó con falta de diligencia en el cumplimiento con la obligación asumida voluntariamente de presentar la Escritura Núm. 54A de 2007 ante el Registro de la Propiedad de Bayamón, Sección Cuarta; no se consignó expresamente en ese instrumento público una advertencia vinculada con el certificado de cancelación de gravamen sobre donación necesario como documento complementario a este en la presentación ante el Registro de la Propiedad; y no mantuvo informada a la Quejosa de todo asunto relacionado con la presentación e inscripción de este instrumento público. Tal conducta es constitutiva de violación al Artículo 15(f) de la Ley Notarial, *supra*, a la fe pública notarial y a los Cánones 12, 18 y 19 del Código de Ética Profesional, *supra*. Además, la ausencia de un contrato de servicios profesionales escrito o de la divulgación efectiva de las partidas por las cuales el Querellado cobró a la Quejosa causó confusión en esta y levantó controversias sobre los honorarios cobrados, asunto que pudo evitar el Querellado de este seguir las guías del Canon 24 del Código de Ética Profesional, *supra*. Igualmente, el Querellado autorizó un instrumento público para el cual carecía de un estudio registral previo y consignó un relevo de responsabilidad por las cargas y gravámenes que puedan surgir del Registro de la Propiedad, lo cual revela una actuación carente del cuidado y el esmero que se espera en el ejercicio de la profesión notarial.[8]

En vista de lo anterior, la ODIN recomendó que suspendiéramos al letrado del ejercicio de la función notarial por un término de tres meses o, en la alternativa, se censurara enérgicamente.

El 23 de mayo de 2016, concedimos un término de veinte días al letrado para que se expresara sobre el informe de la ODIN. El 10 de junio de 2016, el licenciado Maldonado

---

[8] Íd., pág. 11.

Maldonado presentó su posición sobre el particular.[9] Reiteró que la dilación en presentar la escritura al Registro de la Propiedad no se debió a su descuido ni fue injustificada y atribuyó la tardanza a la quejosa. Además, se opuso a la recomendación de la ODIN de suspenderlo por un término de tres meses. Arguyó que su suspensión sería un castigo severo, dadas las circunstancias particulares de su historial como notario y los hechos de la queja. No obstante, aceptó ser censurado enérgicamente por esta Curia.

Examinadas con detenimiento la queja contra el licenciado Maldonado Maldonado, su contestación a la queja, el Informe preparado por la ODIN y la oposición del letrado, así como los demás documentos que obran en el expediente, procedemos a resolver.

## II

### A. Incumplimiento con la fe pública notarial

Los notarios ejercen una función pública mediante la cual dan fe y autentican, según las leyes aplicables, los negocios jurídicos y demás actos y sucesos extrajudiciales que ante ellos se realizan.[10] Éstos son los custodios de la fe pública notarial, espina dorsal de todo el esquema de autenticidad documental.[11] La función pública que ejerce el notario "trasciende a la de un autómata legalizador de firmas y penetra al campo de la legalidad de la transacción

---

[9] Véase *Moción expresando posición en torno a informe presentado por la Oficina de Inspección de Notarías*.
[10] Art. 2 de la <u>Ley Notarial de Puerto Rico</u> (Ley Notarial), Ley Núm. 75 de 2 de julio de 1987, según enmendada, 4 LPRA sec. 2002.
[11] <u>In re Torres Alicea</u>, 175 DPR 456, 460 (2009).

que ante él se concreta".[12] Así pues, esta conlleva el deber inquebrantable de cerciorarse que el "instrumento público cumple con todas las formalidades de la ley, que es legal y verdadero, y que es una transacción legítima y válida".[13] Por esa razón, la función notarial debe ejercerse con extremo cuidado y desempeñarse con esmero, diligencia y estricto celo profesional.[14]

Reiteradamente hemos establecido la importancia de que se realice un estudio sobre los antecedentes registrales de la propiedad previo a la autorización del instrumento público.[15] En In re Vera Vélez, 148 DPR 1 (1999), expusimos la obligación de los notarios de conocer el estado registral de la propiedad que es el objeto en la escritura. Establecimos que ello es parte de su deber como custodios de la fe pública, por lo que los notarios están impedidos de ignorarlo.[16]

Asimismo, en In re Torres Alicea, 175 DPR 456, 460-461 (2009), reiteramos lo antes expuesto y expresamos que "el notario tiene el ineludible deber de ilustrar a los otorgantes para lograr que éstos concurran al acto notarial

---

[12] Íd., pág. 463.
[13] Íd., pág. 460.
[14] In re Pacheco Pacheco, 192 DPR 553, 562 (2015); In re Toro González II, 193 DPR 877, 888 (2015).
[15] In re Torres Alicea, supra; Feliciano Caraballo v. Ross Tuggo, 165 DPR 649, 660 (2005); In re López Maldonado, 130 DPR 863 (1992). Inclusive, si resulta ser que el estado registral del inmueble no era el expresado por el notario en la escritura pública, hemos reconocido que su actuación constituiría una violación al Canon 35 del Código de Ética Profesional, supra.
[16] In re Vera Vélez, supra. Véanse además: In re Toro González II, supra, pág. 892; In re Ayala Oquendo, 185 DPR 572, 580 (2012); Feliciano Caraballo v. Ross Tuggo, supra, pág. 659; In re López Maldonado, supra, pág. 865.

en un estado de conciencia informada".[17] Como parte de esta obligación, el notario debe ofrecer las explicaciones, aclaraciones y advertencias necesarias a los otorgantes.[18]

Cónsono con ello, el Art. 15(f) de la Ley Notarial, *supra*, dispone que el notario realice "de palabra a los otorgantes en el acto del otorgamiento las reservas y advertencias legales pertinentes".[19] Seguidamente, el artículo precitado, impone al notario el deber de consignar en la escritura pública "aquellas advertencias que por su importancia deban, a juicio prudente del notario, detallarse expresamente".[20]

La Ley Notarial, *supra*, establece una serie de advertencias que deben contener las escrituras públicas, según el negocio jurídico que motiva su otorgamiento.[21] No obstante, el notario debe utilizar el derecho positivo y la jurisprudencia, así como considerar el contenido del negocio y las estipulaciones que se suscribirán, al momento de decidir qué advertencias debe realizar y hacer constar en la escritura pública.[22] Consecuentemente hemos reconocido que, para que se logre el consentimiento informado de los otorgantes, el notario debe advertirles sobre la conveniencia y necesidad de realizar un estudio de título.[23]

---

[17] (Énfasis omitido) ("El notario tiene la indeclinable obligación de conocer el estado registral de la propiedad, en su función principal de custodio de la fe pública").
[18] In re Torres Alicea, *supra*, pág. 461.
[19] 4 LPRA sec. 2033.
[20] Íd.
[21] Véase íd.
[22] In re Palmer Ramos, 195 DPR 245, 256 (2016); In re Toro González II, *supra*, págs. 888-889.
[23] In re Torres Alicea, *supra*, pág. 461.

Ello brinda a los otorgantes la oportunidad de conocer la situación registral de la propiedad: entre otras cosas, quién consta como su titular registral, las cargas y los gravámenes que afectan la propiedad. Sólo de esa manera se puede garantizar un consentimiento informado por parte de éstos. Ahora bien, en el caso de que los otorgantes no quieran que se realice el estudio de título, el notario debe consignar en la escritura que les advirtió sobre la necesidad y conveniencia de que sí se hiciera.[24] El incumplimiento con lo antes mencionado constituye una violación al imperativo de custodiar la fe pública notarial, con independencia de que esa haya sido o no la intención del notario.[25]

B. <u>Incumplimiento con los Cánones de Ética Profesional</u>

En Puerto Rico, a diferencia de otros ordenamientos jurídicos, contamos con un cuerpo de normas codificadas que regulan la conducta de la profesión de la abogacía. El Código de Ética Profesional, 4 LPRA Ap. IX, contiene las normas mínimas que deben guiar a todo abogado, incluyendo a los que ejercen la función notarial.

El Canon 12 del Código de Ética Profesional, *supra*, impone el deber a los abogados de ser "conciso[s] y exacto[s] en el trámite y presentación de las causas". Para cumplir con esa obligación, se consignó en el referido Canon que los abogados deben "desplegar todas las diligencias necesarias para asegurar que no se causen indebidas

---

[24] Íd.; <u>Chévere v. Cátala</u>, 115 D.P.R. 432, 445 (1984).
[25] <u>In re Ayala Oquendo</u>, *supra*, pág. 581.

dilaciones en su tramitación y solución".[26] En vista de ello, reiteradamente hemos reconocido que el Canon 12 de ética profesional impone a los abogados el deber de ser puntuales, responsables y diligentes en la tramitación de las causas.[27] Este es un deber ineludible que los togados deben cumplir con gran recelo.

Por otra parte, el Canon 18 del Código de Ética Profesional, *supra*, establece la obligación de la clase togada de desplegar "en cada caso su más profundo saber y habilidad y actua[r] en aquella forma que la profesión jurídica en general estima adecuada y responsable". Asimismo, dispone que "un abogado puede asumir cualquier representación profesional si se prepara adecuadamente para ello y no impone gastos ni demoras irrazonables a su cliente y a la administración de la justicia".[28] Este Canon exige al abogado rendir una labor idónea de competencia y diligencia; es -indiscutiblemente- incompatible con la desidia, la despreocupación y la displicencia de los asuntos que se han encomendado al abogado.[29] De hecho, sabido es que el Canon 18 del Código de Ética Profesional, *supra*, es de aplicación a los abogados-notarios.[30]

En In re Ayala Oquendo, 185 DPR 572, 580 (2012), reiteramos que un abogado-notario infringe el Canon 18 del

---

[26] Canon 12 del Código de Ética Profesional, *supra*.
[27] In re Nazario Díaz, 195 DPR 623, 625 (2016); In re Hernández González, 188 DPR 721, 727 (2013).
[28] (Énfasis suplido).
[29] In re Nazario Díaz, *supra*, pág. 636; In re Plaud González, 181 DPR 874, 886 (2011).
[30] In re Palmer Ramos, supra, pág. 256; In re Vargas Velázquez, 193 DPR 681 (2015). Véanse además: In re González Maldonado, 152 DPR 871 (2000); In re Martínez Ramírez, 142 DPR 329, 340-341 (1997).

Código de Ética Profesional, *supra*, cuando viola las disposiciones de la Ley Notarial, *supra*. Al citar a In re Aponte Berdecía, 161 DPR 94, 106 (2004), expresamos que "una vez un notario contraviene la ley vigente, incurre en una práctica notarial indeseable y contraviene el canon mencionado".[31] No puede perderse de perspectiva que "[e]l desconocimiento de las normas jurídicas y del ejercicio de la profesión vulneran [sic] la naturaleza misma del notariado en nuestra jurisdicción y constituyen [sic] una violación al Canon 18 del Código de Ética Profesional".[32]

Asimismo, en In re Vargas Velázquez, 193 DPR 681, 694-695 (2015), encontramos que el letrado había violado el Canon 18 del Código de Ética Profesional, *supra*, al presentar al Registro de la Propiedad una escritura de partición de herencia sin cerciorarse de que el derecho hereditario estuviese inscrito. Hicimos alusión a In re Pacheco Pacheco, 191 DPR 553, 564 (2015), a los efectos de que "el notario queda compelido a ejercer diligentemente su función […] hasta cerciorarse de que el instrumento público no posee defectos que impidan su inscripción en el Registro de la Propiedad".[33] El incumplimiento con esta norma se traduce en una violación a los Cánones de Ética Profesional, *supra*, que amerita el ejercicio de nuestra facultad inherente de regular la profesión de la abogacía y, por ende, la imposición de medidas disciplinarias.

---

[31] Véase In re Ayala Oquendo, *supra*, pág. 580.
[32] In re Vargas Velázquez, *supra*, pág. 693.
[33] Íd.

Por otro lado, el Canon 19 del Código de Ética Profesional, *supra*, establece el deber de todo abogado de "mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado". Así pues, el Canon 19 impone a la clase togada la obligación de informar a sus clientes sobre las gestiones realizadas y el desarrollo de las encomiendas para las que fueron contratados. Esta obligación de mantener informado a los clientes es distinta y separada del deber de diligencia que se exige a los miembros de la profesión.[34] Por ello, hemos reconocido que se viola el referido canon cuando no se informa del resultado adverso al cliente, no se atienden sus reclamos de información, no se mantiene al cliente informado del estado o situación procesal en el asunto que se encomendó al abogado, o cuando se le niega al cliente información de su caso.[35]

## III

Los notarios están obligados a cumplir con la Ley Notarial y su reglamento, con el Código de Ética Profesional y con las leyes aplicables a los documentos que autorizan.[36] Aunque el letrado no violó el Canon 12 del Código de Ética Profesional, *supra*, -por no ser de aplicación a los hechos imputados en el presente caso-, coincidimos con la conclusión de la ODIN en cuanto a que el licenciado Maldonado Maldonado infringió el Art. 15(f) de la Ley

---

[34] In re Pietri Castellón, 185 DPR 982, 992 (2012).
[35] Íd.
[36] In re Toro González II, *supra*, pág. 889; In re Vargas Velázquez, *supra*, pág. 693.

Notarial, *supra*, la fe pública registral, y el Canon 18 y 19 del Código de Ética Profesional, *supra*. Veamos.

Surge del expediente que el letrado representó a la quejosa en un proceso de divorcio por consentimiento mutuo. Posteriormente, el 13 de agosto de 2007 el licenciado Maldonado Maldonado autorizó la Escritura Núm. 54A de *Liquidación de Sociedad Legal de Gananciales*, en la cual comparecieron la quejosa y el Sr. Rubén García Salgado. Entre las advertencias consignadas en la Escritura Núm. 54A, se hizo constar: (1) la deseabilidad de que la escritura fuera presentada en el Registro de la Propiedad lo más pronto posible y las posibles consecuencias de así no hacerlo; y (2) el que el notario autorizante le había advertido a las partes que la escritura se había otorgado prescindiendo de un estudio de título debido al conocimiento que tenían los otorgantes de la situación registral de la propiedad.[37] Como parte de esta última advertencia se consignó expresamente un relevo de responsabilidad al notario por cargas o gravámenes de cualquier índole que pudieran aparecer en el Registro de la Propiedad.[38]

Nótese que la Escritura Núm. 54A indica que no se realizó un estudio de título que permitiera conocer al licenciado Maldonado Maldonado el estado registral del inmueble que era objeto de la transacción. Ésta meramente lo que consignó fue el conocimiento que tenían los otorgantes sobre el estado registral del inmueble y un

---

[37] Anejo VII en el *Informe.*
[38] Íd.

supuesto relevo de responsabilidad a favor del notario. De este modo, el licenciado Maldonado Maldonado autorizó una escritura pública para trasladar la titularidad de un inmueble cuando ignoraba su estado registral, por lo que no actuó con el cuidado y esmero que exige la profesión notarial. De hecho, ni siquiera se consignó la advertencia sobre la necesidad y conveniencia de realizar el estudio de título, a pesar de la vasta jurisprudencia que la requiere.[39]

El licenciado Maldonado Maldonado tampoco consignó una advertencia sobre la necesidad de incluir como documento complementario la referida certificación de cancelación de gravamen sobre donación del Departamento de Hacienda para poder inscribir la escritura pública en el Registro de la Propiedad. Si bien la legislación no establecía expresamente que debía consignarse en la escritura la necesidad de la referida certificación, el Código de Rentas Internas de Puerto Rico de 1994, Ley Núm. 120-1994, 13 LPRA sec. 9334(c), -vigente al momento del otorgamiento de la Escritura Núm. 54A- requería que este fuera incluido con el instrumento público para hacer viable la inscripción en el Registro de la Propiedad.[40]

Como señalamos, los notarios deben estar conscientes de que, como juristas, tienen la responsabilidad de hacer

---

[39] Véanse In re Vargas Velázquez, *supra*; In re Ayala Oquendo, *supra*; In re Torres Alicea, *supra*; In re Vera Vélez, *supra*; In re Díaz Ruíz, 149 DPR 756, 760 (1999); In re López Maldonado, *supra*; Chévere v. Cátala, *supra*.

[40] Actualmente este requisito está establecido en la Sec. 2054.05(c) del Código de Rentas Internas de Puerto Rico de 2011, Ley Núm. 1-2011, 13 LPRA sec. 31165(c).

las reservas y advertencias legales pertinentes.[41] Ello conlleva "una gestión intelectual y una aplicación inteligente de los principios de derecho positivos y jurisprudenciales".[42] En el pasado hemos reconocido que esta responsabilidad no se da en el vacío; requiere que se tome en cuenta el contenido del negocio jurídico y un análisis integral de las estipulaciones que se consienten.[43] Por lo tanto, resulta lógico y razonable que un notario que se obliga a presentar una escritura pública en el Registro de la Propiedad, y conoce que no se incluyó –o no se le entregó– como documento complementario la correspondiente certificación de cancelación de gravamen sobre donación del Departamento de Hacienda, haga constar dicha advertencia en la escritura pública.

Al no consignar en la escritura las mencionadas advertencias, el licenciado Maldonado Maldonado violó el Canon 18 del Código de Ética Profesional, *supra*, y el Art. 15(f) de la Ley Notarial, *supra*.

Por otro lado, sabido es que presentar los documentos al Registro de la Propiedad puede tener beneficios y no hacerlo pudiera conllevar consecuencias devastadoras para las partes. Por esa razón, su presentación en el Registro de la Propiedad es recomendable. Aunque la presentación de una escritura pública al Registro de la Propiedad no es una función inherente al ejercicio del notariado, una vez el

---

[41] Feliciano Caraballo v. Ross Tuggo, *supra,* pág. 663.
[42] In re Toro González II, *supra*, págs. 888-889; Feliciano Caraballo v. Ross Tuggo, *supra,* pág. 663.
[43] Íd.

notario asume esa responsabilidad está obligado a cumplirla diligentemente.[44] La demora injustificada y por tiempo prolongado es contraria a los postulados del Código de Ética Profesional, *supra*.[45]

A pesar de haber sido contratado en el 2007 para presentar la Escritura Núm. 54A en el Registro de la Propiedad, el licenciado Maldonado Maldonado tardó hasta el 10 de enero de 2014 para presentarla, es decir, casi siete años después de aceptar la encomienda.[46] Al así proceder violó el Canon 18 del Código de Ética Profesional, *supra*. Igualmente, infringió el referido precepto ético cuando presentó al Registro de la Propiedad una escritura consciente de la necesidad de la certificación de cancelación de gravamen que debe expedir el Departamento de Hacienda, pero sin incluirla como documento complementario de la escritura pública. Más aún, el propio letrado admitió que presentó la escritura sin cerciorarse posteriormente de que se presentara el documento complementario necesario para su inscripción. Éste debió ser diligente en la presentación de la escritura pública y asegurarse de que estuviera ausente de defectos que impidieran su inscripción en el Registro de la Propiedad.[47]

---

[44] *Rosas González v. Acosta Pagán*, 134 DPR 720, 730 (1993); *In re Avilés, Tosado*, 157 DPR 867, 893 (2002); *In re Salichs Martínez*, 131 DPR 481, 487-488 (1992). Véase además *In re Díaz Ruíz*, *supra*, pág. 760.

[45] Véase además *In re Pagán Pagán*, 171 DPR 975 (2007); *In re Rodríguez Mercado*, 133 DPR 208, 215-216 (1993).

[46] La escritura pública se presentó el 14 de agosto de 2013, pero sin los aranceles registrales. Véase Anejo IX en el *Informe*.

[47] Véanse *In re Vargas Velázquez*, *supra*, pág. 693; *In re Pachecho Pacheco*, *supra*, pág. 564; *In re Palmer Ramos*, *supra*.

Asimismo, aunque el licenciado Maldonado Maldonado alegó que informó a la quejosa sobre el requisito de obtener el certificado de cancelación de gravamen y de habérselo solicitado en varias ocasiones, no presentó prueba alguna que corroborara la existencia de comunicaciones entre ambos sobre ese particular. En vista de ello, es forzoso concluir que el licenciado Maldonado Maldonado faltó con su deber de mantener informada a la quejosa sobre el estado de presentación de la escritura y violó el Canon 19 del Código de Ética Profesional, *supra*.

Luego de establecer las infracciones éticas y legales del licenciado Maldonado Maldonado, nos corresponde determinar la sanción a imponer.

Para la imposición de sanciones disciplinarias, hemos expuesto en un sinnúmero de ocasiones que podemos tomar en consideración los factores siguientes: (1) la reputación del letrado en la comunidad; (2) su historial previo; (3) si esta constituye su primera falta y si ninguna parte ha resultado perjudicada; (4) la aceptación de la falta y su sincero arrepentimiento; (5) si se trata de una conducta aislada; (6) el ánimo de lucro que medió en su actuación; (7) el resarcimiento al cliente; y (8) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien según los hechos.[48]

---

[48] In re Plaud González, *supra*, págs. 887-888. Véanse además: In re Colón Morera, 172 DPR 49 (2007); In re Quiñones Ayala, 165 DPR 138 (2005); In re Montalvo Guzmán, 164 DPR 806 (2005); In re Vélez Barlucea, 152 DPR 298 (2000); In re Padilla Rodríguez, 145 DPR 536 (1998).

Resulta pertinente considerar que en la Queja AB-2012-0464 censuramos enérgicamente al licenciado Maldonado Maldonado por su falta de diligencia en la gestión notarial.[49] En aquella ocasión apercibimos al letrado que en el futuro debía dar fiel cumplimiento a los deberes impuestos por la Ley Notarial y los postulados que emanan del Código de Ética Profesional.

IV

Por los fundamentos expuestos en esta Opinión *Per Curiam*, *ordenamos la suspensión del Lcdo. Grimaldi Maldonado Maldonado del ejercicio de la notaría por un término de tres meses. Se ordena al Alguacil de este Tribunal incautar inmediatamente la obra protocolar y el sello notarial del licenciado Maldonado Maldonado y entregarlos al Director de la Oficina de Inspección de Notarías para su examen e informe correspondiente. Notifíquese personalmente esta Opinión Per Curiam y Sentencia al licenciado Maldonado Maldonado a través de la oficina del Alguacil de este Tribunal.*

Se dictará Sentencia de conformidad.

---

[49] Véase Resolución de 24 de junio de 2016.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:

Grimaldi Maldonado Maldonado        AB-2014-070



SENTENCIA


En San Juan, Puerto Rico, a 4 de abril de 2017.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, decretamos la suspensión del Lcdo. Grimaldi Maldonado Maldonado del ejercicio de la notaría por un término de tres meses. Se ordena al Alguacil de este Tribunal incautar inmediatamente la obra protocolar y el sello notarial del licenciado Maldonado Maldonado y entregarlos al Director de la Oficina de Inspección de Notarías para su examen e informe correspondiente.

Notifíquese personalmente esta Opinión *Per Curiam* y *Sentencia* al licenciado Maldonado Maldonado a través de la oficina del Alguacil de este Tribunal.

Lo pronunció y manda el Tribunal y certifica el Secretario del Tribunal Supremo.


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo