EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:  Diómedes M. Lajara Radinson | 2021 TSPR 111  207 DPR _____ |
|---|---|

Número del Caso:  TS-11,395

Fecha:  23 de julio de 2021

Abogados del Sr. Diómedes M. Lajara Radinson:

    Lcda. Daisy Calcaño López
    Lcdo. Donald R. Milán Guindín

Materia: La suspensión será efectiva el 23 de julio de 2021, fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Diómedes M. Lajara Radinson

TS-11,395

**_PER CURIAM_**

En San Juan, Puerto Rico, a 23 de julio de 2021.

Nuevamente nos vemos obligados a ejercer nuestra facultad disciplinaria sobre un miembro de la abogacía por incumplir con los postulados éticos que, como mínimo, deben guiar la gestión de todo miembro de la profesión legal. En esta ocasión intervenimos disciplinariamente con el Lcdo. Diómedes M. Lajara Radinson por infringir los Cánones 9, 12, 19 y 23 del Código de Ética Profesional, 4 LPRA Ap. IX. Adelantamos, que procede decretar la suspensión inmediata e indefinida del letrado de la práctica de la abogacía y la notaría.

Veamos las circunstancias fácticas que sustentan nuestra determinación.

I

El Lcdo. Diómedes M. Lajara Radinson (licenciado Lajara Radinson o promovido) fue admitido al ejercicio de la abogacía el 17 de enero de 1996 y prestó juramento como notario el 22 de enero de 1996. Posteriormente, el 23 de enero de 2009 fue aceptado como miembro del Tribunal Federal para el Distrito de Puerto Rico (Tribunal Federal).

Así las cosas, el 31 de marzo de 2021, el Tribunal Federal nos notificó mediante *Order*,[1] que el licenciado Lajara Radinson fue suspendido permanentemente del ejercicio de la práctica de la profesión legal en el foro federal. Resulta claro del *Report and Recommendation* y *Memorandum and Order*, provistos por ese foro que la falta de diligencia, competencia y desidia del letrado en atender los casos de sus clientes resultó en el atraso injustificable de sus causas. En consecuencia, sus acciones resultaron en la desestimación de los casos que representaba ante la Corte de Quiebras.

La investigación de la queja estuvo a cargo del Magistrado Federal Bruce J. McGiverin. Para ello, celebró una audiencia el 1 de mayo de 2015, allí contó con el testimonio del Lcdo. Alejandro Oliveras Rivera, Síndico del Capítulo 13 del Código de Quiebras Federal (licenciado Oliveras Rivera o síndico), el Lcdo. Pedro R. Medina

---

[1] Civil No. 14- 1689 (GAG), *In re* Diómedes Lajara Radinson.

Hernández, Supervisor de Síndicos (licenciado Medina Hernández) y la Sra. Monsita Lecaroz, Asistente del Departamento de Síndicos (señora Lecaroz).

Se desprende del testimonio vertido por el licenciado Oliveras Rivera en el *Report and Recommendation,* que este presentó la queja en contra del promovido por la ineficaz representación legal que proporcionó a sus clientes en el Caso de Quiebras No. 14- 2395 (ESL). Testificó que el licenciado Lajara Radinson sometió la petición de sus clientes el 28 de marzo de 2014 y que debió adjuntar el plan de reorganización o proporcionarlo dentro de los catorce (14) días siguientes, según dispone la Regla 1007(c) de las Reglas de Procedimiento de Quiebras.[2] En vez, entregó el plan de reorganización el 3 de mayo de 2014, o sea, más de veinte (20) días después de transcurrido el plazo. Además, expresó que el abogado en ningún momento compareció para mostrar justa causa por su tardanza, ni solicitó una extensión de tiempo ante ese foro. Asimismo, indicó que el abogado entregó la propuesta de reorganización requerida el día después de haberse presentado una moción para desestimar el caso.

En otra ocasión, el licenciado Oliveras Rivera se vio en la obligación de cancelar la primera reunión pautada con los acreedores porque el promovido no proporcionó los talonarios de trabajo de sus clientes siete (7) días antes

---

[2] Fed. R. Bankr. P. 1007(c).

de la conferencia, como exige la Regla 4002 del precitado reglamento.[3] Por lo tanto, reprogramó la reunión, pero llegado el día, aún faltaba la evidencia de ingresos de sus clientes. En igual fecha y momentos antes de iniciarse la reunión, el letrado llamó al síndico para posponerla, pero su petición fue denegada. No obstante, se ausentó, por ende, sus clientes comparecieron sin contar con su representación legal. Es allí, que los deudores se enteran por primera vez sobre la *Moción de Desestimación* y que los talonarios aún no habían sido entregados.

Ante la información, los deudores reaccionaron sorprendidos, decepcionados y frustrados. Pues, revelaron que habían suministrado esa y toda la evidencia solicitada por el promovido. Por otra parte, expresaron y demostraron mediante recibos de pago, haber saldado la totalidad de los honorarios requeridos por el promovido para la presentación y tramitación de su petición de quiebras.

Por lo que, el licenciado Oliveras Rivera reveló que el promovido no informó que había sido compensado, según dispone la Regla 2016(b) del mencionado reglamento.[4] Por el contrario, solicitó que el tribunal le permitiera pagar los honorarios a plazos. Los deudores también informaron que este era el segundo caso de quiebras que entablaban con el abogado. Expresaron que su primer caso fue desestimado,

---

[3] Fed. R. Bankr. P. 4002.
[4] Fed. R. Bankr. P. 2016(b).

pero que el promovido nunca les proporcionó una explicación sobre lo ocurrido.

Por otra parte, durante su testimonio el licenciado Oliveras Rivera también manifestó que el promovido incumplió con las órdenes del tribunal en tres (3) ocasiones consecutivas. Esto al no comparecer dentro del término ordenado:(1) para mostrar causa;(2) para el depósito de $831.00 ante el síndico, y (3) para responder por el mal manejo de sus casos de quiebras. No conforme con esto, señaló que el incumplimiento con las órdenes del tribunal y su retraso en contestar las órdenes no fueron precedidas por mociones en solicitud de una extensión de tiempo o explicaciones que mostraran justa causa por su tardanza.

A su vez, el licenciado Oliveras Rivera agregó que este patrón de conducta también era evidente en otros casos. Por ejemplo, en el Caso de Quiebra Núm. 14-5203 (MCF), el síndico presentó una *Moción de Desestimación* porque el promovido no pagó los costos de presentación y él ni sus clientes comparecieron a la primera reunión con los acreedores. De igual forma, los planes de reorganización financiera, estados de ingresos y otros documentos financieros se presentaron con retraso. En ese caso, los deudores hicieron dos pagos atrasados y al ser interrogados, indicaron que habían realizado los pagos al promovido; quien les había ordenado que le entregaran los pagos a él y no directamente al síndico. A tenor con el patrón de conducta

antes esbozado, el licenciado Oliveras Rivera, enfatizó que un ochenta y tres por ciento (83%) de los casos presentados y representados por el promovido han resultado en la desestimación.

Conforme con lo antes enunciado, el licenciado Medina Hernández testificó que el promovido carece del conocimiento necesario para adelantar los casos de quiebra de sus clientes. Por otra parte, la señora Lecaroz aseguró que el promovido mantiene la misma conducta en los casos que ella supervisa bajo el Capítulo 7 de Quiebras. En lo pertinente, enfatizó que estos son menos complejos que los casos acogidos bajo el Capítulo 13 de Quiebras, sin embargo, el promovido demuestra la misma falta de conocimiento y dejadez.

Como parte de la investigación, se citó al promovido el 9 de enero de 2015 para que proporcionara sus argumentos en contrario. Durante la audiencia solicitó someter sus defensas por escrito. Ante la petición, el foro federal le concedió hasta el 27 de febrero de 2015 para que presentará su escrito en contestación.

Así las cosas, el 19 de junio de 2015, el Magistrado Federal Bruce J. McGiverin emitió su recomendación sin contar con el beneficio de la comparecencia del promovido. En su informe recomendó que el promovido fuera desaforado del ejercicio de la práctica federal. Razonó que la conducta desplegada por el licenciado Lajara Radinson constituyó un

patrón de desprecio a su deber profesional y a sus obligaciones para con los clientes que representaba.

Por incurrir en estas acciones, el Tribunal Federal concluyó que el letrado violó las Reglas 1.1, 1.3, 1.4, 1.15 y 3.2 que disponen las *Model Rules of Professional Conduct*,[5] según adoptadas por la *Local Rule 83E(b) of the United States District Court for the District of Puerto Rico*.

El 11 de diciembre de 2015, el Juez Pedro A. Delgado Hernández del foro federal, emitió un *Memorandum and Order* acogiendo la recomendación. Cónsono con lo anterior, el Hon. Gustavo A. Gelpí, Juez Presidente del Tribunal Federal para el Distrito de Puerto Rico, remitió a esta Curia la Orden de desaforo del promovido ante el foro federal ⸺efectiva el 30 de marzo de 2021.

Una vez advertidos, el 20 de abril de 2021, le ordenamos al promovido mediante *Resolución*,[6] comparecer ante nosotros y mostrar causa por la cual no se debía iniciar un proceso disciplinario en su contra. El 21 de junio de 2021, luego de varios incidentes procesales, presentó su *Comparecencia en cumplimiento de orden.* En su alegato, el licenciado Lajara Radinson admite la falta de diligencia en la atención y cumplimiento con las órdenes y requerimientos del Tribunal Federal. Ante lo ocurrido, el

---

[5] Model Rules of Prof'L Conduct (Am. Bar Ass'n 2020).
[6] *Resolución*, *Apéndice del TS- 11,395*, RES202100028964.

letrado expresó estar arrepentido por su conducta cuya severa sanción mereció su suspensión de la práctica federal. Aunque reconoce que este Tribunal tiene la facultad para diciplinarlo por lo acontecido, expone que no debería ser sancionado nuevamente por hechos ya adjudicados en el foro federal, por resultar en un doble castigo. [7]

Es meritorio señalar que el promovido actualmente tiene una queja presentada en su contra,[8] así como dos querellas activas ante este Tribunal.[9]

Examinado este cuadro fáctico, procedemos a exponer los fundamentos en los cuales se sostiene nuestra determinación de suspender inmediata e indefinidamente al licenciado Lajara Radinson. Veamos.

## II

> En Puerto Rico, donde el sistema democrático es fundamental para la vida de la comunidad y donde la fe en la justicia se considera factor determinante en la convivencia social, es de primordial importancia instituir y mantener un orden jurídico íntegro y eficaz, que goce de la completa confianza y apoyo de la ciudadanía.[10]

Es por esto que se les exige a todos los miembros de la profesión jurídica desempeñar el ministerio con la mayor y más excelsa competencia, responsabilidad e integridad.[11] Es de suma importancia tener presente que el deber de

---

[7] *Véase* la *Comparecencia en cumplimiento de orden*, en la pág. 5.
[8] AB-2020-0089, *In re* Diómedes Lajara Radinson.
[9] CP-2020-0009 y CP-2020-0010, *In re* Diómedes Lajara Radinson.
[10] Preámbulo del Código de Ética, 4 LPRA Ap. IX.
[11] Íd.

conducirse de un modo decoroso, íntegro y compatible con los postulados de los Cánones de Ética Profesional aplica a todos los abogados admitidos en nuestra jurisdicción, ***independientemente del foro ante el cual postulen***.[12]

La afirmación anterior es así porque la naturaleza misma de la profesión impide actuar al margen de la conducta esperada una vez es admitido al ejercicio de la profesión en nuestro país.[13] **El mero hecho de ejercer la profesión ante el foro federal o un foro administrativo no excluye al abogado admitido en nuestra jurisdicción del ámbito de aplicación del Código de Ética Profesional.**[14] En esas circunstancias, al abogado también le son de aplicación las reglas de conducta profesional vigentes en el foro ante el cual postule.[15]

Reiteradamente hemos expresado que este Tribunal tiene la facultad inherente de reglamentar el ejercicio de la abogacía en nuestra jurisdicción.[16] Como parte de ello, podemos desaforar o suspender a aquellos miembros de la profesión que no estén aptos para desempeñar tan delicado

---

[12] *In re Rochet Santoro*, 174 DPR 123, 129 (2008); *In re Córdova González*, 135 DPR 260, 267 (1994). (Énfasis suplido).
[13] Íd.
[14] Íd. (Énfasis suplido).
[15] Íd.
[16] *In re Pellot Córdova*, 204 DPR 814, 824-825 (2020); *In re Aldea Irizarry,* 204 DPR 736, 741 (2020); *In re Silvestrini Carrasquillo*, 201 DPR 838, 842 (2019); *In re Velilla Reyes*, 200 DPR 248, 250 (2018); *In re Colón Ledée,* 193 DPR 188, 190 (2015); *In re García Suárez*, 189 DPR 995, 998 (2013); *In re Martínez Maldonado*, 185 DPR 1085, 1087 (2012).

ministerio.[17] Conforme con lo anterior, cuando un abogado admitido al ejercicio de la profesión en Puerto Rico es sancionado disciplinariamente por otro foro judicial, es imperativo evaluar su conducta para determinar si procede la imposición de una sanción disciplinaria en nuestra jurisdicción.[18]

En lo pertinente al caso de autos, el Canon 9 de Ética Profesional (Canon 9), *supra*, dispone que: "[e]l abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto[…]".[19] En ese contexto, hemos enunciado que es la obligación de todo letrado responder diligente y oportunamente a los requerimientos y las órdenes de este Tribunal, particularmente aquellos relacionados con los procedimientos disciplinarios sobre su conducta profesional.[20] A su vez, hemos expresado que cuando los abogados no cumplen con las órdenes de este Tribunal demuestran menosprecio hacia nuestra autoridad, infringiendo, de ese modo, las disposiciones del Canon 9, *supra*.[21]

Al interpretar el Canon 9, *supra*, hemos expresado que la naturaleza de la función de un abogado requiere que este

---

[17] *In re Santos Báez*, 199 DPR 202, 205 (2017); *In re Colón Ledée*, 190 DPR 51, 54, (2014); *In re Morell Corrada*, 171 DPR 327, 330 (2007).

[18] *In re Rochet Santoro*, *supra*; *In re Córdova González*, *supra*.

[19] 4 LPRA Ap. IX. Omisión nuestra.

[20] *In re Negrón Ramos*, 204 DPR 177, 181 (2020); *In re Marín Serrano*, 197 DPR 535, 539 (2017); *In re Sepúlveda Torres*, 196 DPR 50, 54 (2016); *In re Fidalgo Córdova*, 183 DPR 217, 222 (2011).

[21] *In re Gerena Ramos*, 196 DPR 57, 60 (2016); *In re Rodríguez Quesada*, 195 DPR 967, 969 (2016); *In re Irizarry Irizarry*, 190 DPR 368 (2014); *In re Massanet Rodríguez*, 188 DPR 116, 124 (2013).

emplee estricta atención y obediencia a las órdenes de este Tribunal o de **cualquier foro al que se encuentre obligado a comparecer,**[22] **incluyendo el Tribunal Federal.** En un sentido más específico, el deber de respeto que surge del Canon 9, *supra*, se manifiesta en dos vertientes: el mandato de respetar las órdenes y directrices emitidas por los tribunales (respeto a la autoridad judicial) y la obligación de respetar a los jueces, empleados y funcionarios del tribunal en sus comparecencias e interacciones con estos (respeto de carácter cívico).[23]

Por su parte, el Canon 12 del Código de Ética Profesional (Canon 12), *supra*, impone a los miembros de la profesión el deber de "ser puntual[es] en su asistencia y conciso[s] y exacto[s] en el trámite y presentación de las causas". [24] Esto conlleva "el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución".[25] El incumplimiento continuo con lo antes mencionado demuestra el desconocimiento de los principios éticos más básicos que exigen el mayor respeto hacia los juzgadores.[26]

En ese sentido hemos reconocido que "[l]a obligación establecida por el Canon 12 ha de cumplirla el abogado en

---

[22] *In re Vargas Díaz*, 200 DPR 152, 157 (2018); *In re Rodríguez Ruiz*, 198 DPR 73, 78 (2017); *In re Sepúlveda Torres*, supra, pág. 54; *In re García Ortiz*, 187 DPR 507, 524 (2012).(Énfasis suplido).
[23] S. Steidel Figueroa, *Ética y responsabilidad disciplinaria del abogado*, San Juan, Pubs JTS, 2010, pág. 312.
[24] 4 LPRA Ap. IX.
[25] Íd.
[26] *In re Feliciano Rodríguez*, 298 DPR 369, 380 (2017); *In re Montalvo Delgado*, 196 DPR 542, 551 (2016).

todas las etapas de un litigio, y comprende el acatar fielmente las órdenes del Tribunal".[27] Por lo tanto, "la incomparecencia injustificada a las vistas señaladas por el tribunal, así como las actuaciones y omisiones que coloquen en riesgo la causa de acción de los clientes, son infracciones patentes" al Canon 12, *supra.*[28]

De otro lado, el Canon 19 del Código de Ética Profesional (Canon 19), *supra*, dispone que "[e]l abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado".[29] Ello "constituye un elemento imprescindible en la relación fiduciaria que caracteriza el vínculo abogado-cliente".[30] Así pues, este impone a la clase togada la obligación de informar a sus clientes sobre las gestiones realizadas y el desarrollo de las encomiendas para las que fueron contratados. Esta obligación de mantener informado a los clientes es distinta y separada del deber de diligencia que se exige a los miembros de la profesión.[31] Por lo tanto, se viola el referido precepto cuando no se informa del resultado adverso al cliente, no se atienden

---

[27] *In re Feliciano Rodríguez*, supra; *In re Pagán Torres*, 194 DPR 925, 929 (2016).

[28] *In re Blain León*, 199 DPR 443, 452 (2017); *In re Nazario Díaz*, 195 DPR 623, 635 (2016) (*citando a In re Valentín Custodio*, 187 DPR 529, 543 (2012)).

[29] 4 LPRA Ap. IX.

[30] *In re Sánchez Reyes*, 204 DPR 548, 571 (2020); *In re Collado Ruiz*, 195 DPR 705, 713 (2016); *In re Santos Cruz*, 193 DPR 224, 229 (2015).

[31] *In re Sánchez Reyes*, supra; *In re García Cabrera*, 201 DPR 902 (2019); *In re Maldonado Maldonado*, 197 DPR 802, 814 (2017); *In re Roldan González*, 195 DPR 414, 423-424 (2016); *In re Pietri Castellón,* 185 DPR 982, 992 (2012).

sus reclamos de información, no se mantiene al cliente informado del estado o situación procesal en el asunto que se encomendó al abogado, o cuando se le niega al cliente información de su caso.[32]

Cónsono con lo previamente expresado, en torno a la relación entre el abogado y su cliente, el Canon 23 del Código de Ética Profesional (Canon 23), *supra*, preceptúa que la naturaleza fiduciaria de esta relación exige que esté fundada en la honradez absoluta.[33] Asimismo, dispone que todo abogado "debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen".[34] Es por eso, que un abogado que retiene fondos de sus clientes incurre en una práctica altamente lesiva a la profesión legal y menoscaba la relación de honradez y confianza que debe existir entre él y su cliente.[35] En consecuencia, hemos resuelto que infringe el Canon 23, *supra*, un abogado que retiene cualquier cantidad de dinero perteneciente a su cliente.[36] Ello, "independientemente de que haya devuelto el dinero retenido o no haya tenido la intención de apropiárselos permanentemente".[37] Incluso, la

---

[32] *In re Maldonado Maldonado,* supra, pág. 813; *In re García Cabrera, supra; In re Pietri Castellón,* supra.

[33] 4 LPRA Ap. IX.

[34] Íd.

[35] *In re Rivera Rodríguez*, 202 DPR 1026, 1050 (2019).

[36] *In re Rivera Contreras*, 202 DPR 73, 89 (2019); *In re Peña Ríos*, 202 DPR 5, 17 (2019); *In re González Rodríguez*, 201 DPR 174, 212 (2018).

[37] *In re Rivera Rodríguez,* supra; *In re Martí Rodríguez*, 194 DPR 467, 474 (2016).

dilación en la devolución de esos fondos es causa suficiente para infringir el Canon 23, *supra*. [38]

Por último, cuando se impone una sanción disciplinaria a un abogado, debemos considerar su historial, si goza de buena reputación, si ha aceptado su falta y muestra sincero arrepentimiento, si medió ánimo de lucro y cualquier otro factor pertinente a los hechos.[39]

## III

Es indiscutible que todo abogado admitido a nuestra jurisdicción tiene una obligación ineludible de desempeñarse dentro del marco ético-moral delineado por los Cánones de Ética Profesional. El trasfondo fáctico de este caso resulta incompatible con lo anteriormente mencionado, pues de los acontecimientos surge que el licenciado Lajara Radinson quebrantó los Cánones 9, 12, 19 y 23 de nuestro Código de Ética Profesional, *supra*.

En atención a las disposiciones éticas esbozadas colegimos que el letrado infringió, en multiplicidad de ocasiones, las órdenes del Tribunal Federal de Quiebras y los requerimientos de sus funcionarios. La falta de cooperación del letrado denotó un claro menosprecio hacia los intereses de sus clientes y a la autoridad que buscaba

---

[38] *In re González Díaz*, 201 DPR 145, 152 (2018); *In re Colón Hernández*, 189 DPR 275, 284 (2013).
[39] *In re Martí Rodríguez,* supra, pág. 475; *In re Pietri Castellón*, supra, pág. 995.

protegerlos. Sin duda, sus acciones quebrantaron lo dispuesto en el Canon 9, *supra*, que exige el mayor respeto de aquellos admitidos a nuestra profesión, independientemente de donde representen nuestra institución.

Asimismo, su conducta reiterada de comparecer de manera tardía a los requerimientos establecidos demostró falta de diligencia y puntualidad en la presentación oportuna de la causa de sus clientes. Además, el no acatar las órdenes del Tribunal de Quiebras Federal afectó crasamente los intereses de sus representados, lo que culminó con la desestimación de los recursos allí instados. La incomparecencia del promovido a las reuniones pautadas con los acreedores y la falta de someter la evidencia requerida, fueron actuaciones que incidieron directamente en la causa de acción para la cual fue contratado, esto a pesar de que sus clientes depositaron en él —en dos ocasiones— su confianza. Todo lo anterior, en clara violación al Canon 12, *supra*.

En cuanto con el deber de mantener informados a sus clientes, el letrado falló en repetidas ocasiones el comunicarles los acontecimientos del caso a sus clientes. Pues, jamás les comunicó que incumplió con la entrega de los talonarios y de que el síndico había solicitado la desestimación de la petición de quiebras por el cumplimiento tardío. Por ende, los clientes del representado se llevaron

la desagradable sorpresa cuando se enteraron de los pormenores de su caso a través de terceros. La falta al Canon 19 antes descrita también se vio abatida cuando el promovido no les explicó las razones de la desestimación del primer pleito de quiebras instado.

Por último, el promovido solicitó un plan de pago para sufragar la presentación de los recursos ante el foro federal, aunque ya contaba con el monto total para poder costearlos. Este debió informar ante el foro que contaba con la cuantía para pagar los costos de las mociones, según establece la Regla 2016(b) de las Reglas de Procedimientos de Quiebras, *supra*. Contrario a lo dispuesto, retuvo fondos que no le pertenecían y solicitó ante el foro federal una alternativa que resultaba innecesaria. Como resultado, el promovido menoscabó la relación de honradez y confianza adeudada para con sus clientes, por lo que contravino con lo exigido en el Canon 23, *supra*.

En el caso de autos, consideramos como atenuante que el letrado admite su falta de diligencia en la atención y cumplimiento con los requerimientos y órdenes del Tribunal Federal. También expresa estar arrepentido por incurrir en tales conductas.

En vista de todo lo anterior y tomando en consideración la totalidad de las circunstancias, procede suspender inmediata e indefinidamente al letrado del ejercicio de la abogacía y la notaría.

IV.

Evaluado y ponderado el Derecho aplicable, así como las infracciones éticas incurridas por el licenciado Lajara Radinson, decretamos su suspensión inmediata e indefinida del ejercicio de la abogacía y la notaría.

Le ordenamos notificar a todos sus clientes de su inhabilidad para continuar con su representación y a devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos. Además, deberá informar inmediatamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente y acreditar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la abogacía de solicitarlo en el futuro.

Consecuentemente, el Alguacil de este Tribunal deberá incautar inmediatamente la totalidad de la obra protocolar y sello notarial del señor Lajara Radinson y entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe. En virtud de esta suspensión, la fianza que garantiza las funciones notariales queda automáticamente cancelada. No obstante, la fianza se considerará buena y válida por tres (3) años

después de su terminación, en cuanto a los actos realizados durante el periodo en que estuvo vigente.

Por último, se ordena el archivo administrativo del AB-2020-0089, el CP-2020-0009 y el CP-2020-0010, hasta tanto dispongamos otra cosa.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Diómedes M. Lajara Radinson

TS-11,395

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de julio de 2021.

Evaluado y ponderado el Derecho aplicable, así como las infracciones éticas incurridas por el licenciado Lajara Radinson, decretamos su suspensión inmediata e indefinida del ejercicio de la abogacía y la notaría.

Le ordenamos notificar a todos sus clientes de su inhabilidad para continuar con su representación y a devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos. Además, deberá informar inmediatamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente y acreditar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la abogacía de solicitarlo en el futuro.

Consecuentemente, el Alguacil de este Tribunal deberá incautar inmediatamente la totalidad de la obra protocolar y sello notarial del señor Lajara Radinson y entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe. En virtud de esta suspensión, la fianza que garantiza las funciones notariales queda automáticamente cancelada. No obstante, la fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que estuvo vigente.

Por último, se ordena el archivo administrativo del AB-2020-0089, el CP-2020-0009 y el CP-2020-0010, hasta tanto dispongamos otra cosa.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez y los Jueces Asociados señor Martínez Torres y señor Estrella Martínez no intervinieron.



                                     José Ignacio Campos Pérez
                                  Secretario del Tribunal Supremo