EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| | 2020 TSPR 102 |
| | 204 DPR _____ |
| Abelardo Sánchez Reyes | |

Número del Caso:  AB-2018-198


Fecha:  23 de julio de 2020


      Abogado del promovido:

      Por derecho propio


Oficina del Procurador General:

      Lcda. Lorena Cortés Rivera
      Subprocuradora General

      Lcda. Yaiza Marie Lugo Fontánez
      Procuradora General Auxiliar


Oficina de Inspección de Notarías:

      Lcdo. Manuel E. Ávila De Jesús
      Director


Materia:  La suspensión será efectiva una vez advenga final y firme la Sentencia conforme la Regla 45 del Reglamento del Tribunal Supremo sobre reconsideración.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Abelardo Sánchez Reyes          AB-2018-198        Conducta
      (TS-6609)                                    Profesional

*PER CURIAM*

En San Juan, Puerto Rico, a 23 de julio de 2020.

En esta ocasión, nos corresponde ejercer nuestro poder disciplinario para evaluar la conducta del Lcdo. Abelardo Sánchez Reyes (licenciado Sánchez Reyes o promovido) y determinar si, en el ejercicio de su función notarial, infringió la Ley Notarial de Puerto Rico, *infra*, así como diversos Cánones del Código de Ética Profesional, *infra*. Por tanto, procedemos a realizar un recuento de los hechos que dieron lugar a la queja presentada en su contra, al igual que efectuar un examen del derecho sustantivo aplicable.

**I**

### A.   Trasfondo fáctico y procesal

El promovido fue admitido al ejercicio de la abogacía el 7 de noviembre de 1979 y prestó juramento como notario el 4 de marzo de 1980.

El 22 de diciembre de 2007, el licenciado Sánchez Reyes otorgó la Escritura Núm. 14 de *Segregación, donación y constitución de servidumbre* (Escritura Núm. 14) en la que comparecieron la Sra. Aurea Vázquez Ortega, en su carácter personal y en representación de su esposo, el Sr. Tomás Sánchez Rodríguez, como donantes de un terreno que sería segregado en cuatro (4) lotes a favor de sus hijas: la Sra. Sonia González Vázquez, la Sra. María Isabel González Vázquez, la Sra. Iris Inés Sánchez Vázquez y, finalmente, la Sra. Irma Sánchez Vázquez (señora Sánchez Vázquez).   El promovido autorizó la escritura y consignó las cuatro (4) segregaciones de la Finca Núm. 1105 en virtud de la *Resolución* emitida por la Administración de Reglamentos y Permisos (ARPe) en el Caso Núm. 92-10-B-882 BPLS, y el plano de inscripción aprobado.   Además, sostuvo que se reservó una faja de terreno para el uso público.[1]   En el acápite de las

---

[1]   La información que surge del Registro de la Propiedad Inmobiliaria (Registro de la Propiedad) sobre la presentación de la Escritura Núm. 14 de *Segregación, donación y constitución de servidumbre* (Escritura Núm. 14) es la siguiente:

Asiento 256 Diario 492: ABELARDO SÁNCHEZ REYES presenta a las once horas y tres minutos el veintiocho de [m]arzo del año dos mil ocho, escritura número 14, sobre SEGREGACIÓN, DONACIÓN Y CONSTITUCIÓN DE SERVIDUMBRE, otorgada en BAYAMÓN el día veintidós de [d]iciembre del año dos mil siete ante el notario DON ABELARDO SÁNCHEZ REYES, para que se inscriba a favor de JOAN LAUREANO COLÓN sobre la finca número 1105 del término municipal de Vega Alta, SOLAR ES

advertencias en la Escritura Núm. 14, el letrado prescribió lo siguiente:

> UNO: Se le advierte a las partes sobre su responsabilidad o derecho de examinar en el Registro de la Propiedad u obtener un estudio de título en relación a las cargas y gravámenes u otros derechos inmobiliarios sobre la propiedad objeto de esta donación.
>
> DOS: Les he advertido también sobre:
>
> (a) La conveniencia de presentar la escritura pública en el Registro de la Propiedad razón por la cual advierte a las partes que estas vienen obligadas a realizar toda gestión y entregar todo tipo de documento público que constituya limitación de obtención de resoluciones enmendadas así como la corrección de toda deficiencia notificada por el Registrador de la Propiedad correspondiente y además le informe del costo de la inscripción.
>
> [(b)] La responsabilidad y consecuencia de no presentar la escritura en el Registro de la Propiedad[.][2]

Posteriormente, el 28 de marzo de 2008, el promovido presentó la Escritura Núm. 14 en el Registro de la Propiedad Inmobiliaria (Registro de la Propiedad), Sección Tercera de Bayamón, y quedó registrada en el Asiento 256 del Libro 492 del Diario de Operaciones para su calificación y despacho.

El 30 de abril de 2008, el Registro de la Propiedad le notificó al promovido que el plano de inscripción presentado sobre la Finca Núm. 1105 en el Registro de Planos de la sección mencionada adolecía de la siguiente falta:

---

IDENTIFICADO CON LOS NÚMEROS 1, 2, 3, SOLAR IDENTIFICADO COMO SERVIDUMBRE DE PASO, FAJA DE USO PÚBLICO y REMANENTE [,] RADICADOS EN EL BARRIO ESPINOSA con cabida de 1424.827 M.C., 434.279 M.C., 643.469 M.C., 8 METROS DE ANCHO, UN LARGO DE 82, 91.354 M.C. y 8293.1348 M.C. [...]. *Informe*, Anejo XII.

[2]  Íd., Anejo X, págs. 7-8.

1. La cabida de la finca descrita en la Resolución de ARPe no es la correcta ya que dicha finca tenía 6.71 cuerdas en 1967, luego se segregaron varios solares en 1968 y 1982 por lo que deberán enmendar dicha Resolución.[3]

El 14 de mayo de 2013,[4] el Registro de la Propiedad notificó nuevamente al promovido que la Escritura Núm. 14 tenía una falta que impedía su inscripción, a saber:

1- Según [el] [R]egistro [de] la [P]ropiedad luego de practicadas varias segregaciones queda un remanente aproximado de 15,312.601 metros cuadrados, según documento de epígrafe tiene una cabida de 6.71 cdas, equivalentes a 26,372.9546 metros cuadrados.[5]

Según surge del expediente, el asiento de la Escritura Núm. 14 caducó el 12 de agosto de 2013.[6] Esto, debido a que el letrado no subsanó las deficiencias notificadas. El licenciado Sánchez Reyes entregó el expediente del caso a la señora Sánchez Vázquez el 24 de agosto de 2018.

**B.  Trámite disciplinario**

El 31 de julio de 2018, el sobrino de la señora Sánchez Vázquez, el Sr. Luis J. Morales González (señor Morales González o promovente) presentó una queja en contra del promovido en la que planteó, en síntesis, que el licenciado

---

[3]   Íd., Anejo XIII.

[4]   Íd., Anejo XII.

[5]   Íd., Anejo XIV.

[6]   Cabe resaltar que la información que surge de la página electrónica del Registro de la Propiedad refleja la presentación de la Escritura Núm. 14 el 28 de marzo de 2008 y, además, establece que el asiento de presentación caducó el 12 de agosto de 2013. Posteriormente, el documento presentado fue devuelto al Lcdo. Abelardo Sánchez Reyes (licenciado Sánchez Reyes o promovido) el 27 de junio de 2014. Íd., Anejo XII.

Sánchez Reyes no había devuelto el expediente del caso. Explicó que, el promovido solo entregó una copia de los documentos que obraban en el expediente a la señora Sánchez Vázquez por lo que solicitó la entrega del expediente original para que otro abogado prosiguiera el trámite de inscripción en el Registro de la Propiedad. Además, sostuvo que intentó comunicarse con el promovido para indagar sobre el particular, pero las gestiones -que incluyeron llamadas telefónicas y visitas a la oficina del promovido- resultaron infructuosas. Conforme a ello, solicitó como remedio la entrega del expediente.

Por otro lado, alegó que el letrado se comprometió con los otorgantes a presentar la Escritura Núm. 14 en el Registro de la Propiedad junto a los documentos necesarios para la inscripción de los negocios jurídicos incorporados en el instrumento público, cosa que no hizo, y como resultado, la falta de inscripción impidió que se beneficiara de la ayuda del *Federal Emergency Management Act* (FEMA) por los daños ocurridos debido al paso del Huracán María.

Por su parte, el 17 de septiembre de 2018, el licenciado Sánchez Reyes presentó su contestación a la queja, mediante la cual sostuvo que la señora Sánchez Vázquez fue quien contrató sus servicios profesionales para otorgar y gestionar la inscripción de la Escritura Núm. 14 en el Registro de la Propiedad. De esta forma, explicó que nunca representó al promovente. Añadió que el señor Morales González había actuado sin autorización de su tía. A su

vez, manifestó que la señora Sánchez Vázquez acudió a su oficina, en donde pudo entregarle el expediente original del caso que custodiaba. Asimismo, precisó que la señora Sánchez Vázquez aceptó la renuncia de sus servicios profesionales y firmó un relevo de responsabilidad a favor del letrado. Como evidencia, anejó los documentos suscritos por la señora Sánchez Vázquez y finalmente, solicitó el archivo de la queja.[7]

Así las cosas, le referimos el asunto a la Oficina del Procurador General (OPG) para la investigación de la queja (AB-2018-198). El 2 de octubre de 2018, la OPG envió un requerimiento al promovente y al licenciado Sánchez Reyes

---

[7]   Resulta meritorio reseñar que surge del expediente que dicho relevo tiene dos documentos que fueron redactados en manuscrito y aparecen firmados por la Sra. Irma Sánchez Vázquez (señora Sánchez Vázquez). En el primer documento se consignó lo siguiente:

> **Entrega de expediente y relevo de responsabilidad**
>
> **Yo Irma Sánchez acepto haber recibido la totalidad del expediente de su caso** el cual contiene todos los documentos, escrituras, planos, poder y notificaciones del registro y otros.
>
> Por la presente, acepto la renuncia del Lcdo. Abelardo Sánchez Reyes **y lo relevo de toda responsabilidad respecto a dicho caso.**
>
> Hoy 24 de agosto de 2018.
>
> [Firma de la señora Sánchez Vázquez].

Ahora bien, en el segundo documento, como relevo de responsabilidad, se señaló que:

> Yo Irma Sánchez cliente y dueña del expediente del caso de unas escrituras de Segregación, donación y constitución de servidumbre, Escritura Núm. 14 hecha [el] 22 [de] diciembre de 2007, **[a]l recibo del expediente me comprometo a que el Sr. Luis J. Morales González retire de inmediato una queja radicada en la Secretaría del Tribunal Supremo al día 18 de julio de 2018, queja número (2018-198).**
>
> Se aclara para todos los efectos legales que el Sr. Luis J. Morales González no es y nunca ha sido cliente de este abogado.
>
> En Bayamón, hoy 24 de agosto de 2018.
>
> [Firma de la señora Sánchez Vázquez]. (Énfasis nuestro). Íd., Anejo XVI y XVII.

mediante el cual solicitó información sobre la relación del promovente con la señora Sánchez Vázquez y la información personal de ésta. El señor Morales González informó que la señora Sánchez Vázquez es la hermana de su madre, la Sra. Sonia González Vázquez. Añadió que, por acuerdo de su familia, se le delegó a su tía la responsabilidad de contratar a un abogado para procurar la inscripción de los terrenos que fueron segregados y donados en la Escritura Núm. 14 en el Registro de la Propiedad en beneficio de ella y de la madre del promovente. Sin embargo, sostuvo que su tía le compartió el número de teléfono del promovido para que se comunicara con él. Además, explicó que su tía contaba con la evidencia sobre los intentos fallidos que realizó para contactar al promovido, previo a la presentación de la queja.

Por otro lado, explicó que el Registro de la Propiedad notificó dos (2) faltas al promovido y éste no realizó gestión alguna para lograr subsanarlas y con ello, impidió su inscripción. Por su parte, el promovido reiteró que el promovente no es su cliente. No obstante, reconoció que éste es pariente de la señora Sánchez Vázquez, quien lo contrató para la redacción y otorgamiento de la escritura mencionada anteriormente.

Como parte de su facultad investigativa, la OPG citó a la señora Sánchez Vázquez a una entrevista el 31 de octubre de 2018. Ésta compareció y afirmó que contrató al licenciado Sánchez Reyes para la autorización de la Escritura Núm. 14 y posterior inscripción en el Registro de la Propiedad. Sin

embargo, resaltó que la escritura no quedó inscrita en el Registro de la Propiedad. Añadió que, solicitó al promovido los documentos sobre su caso y éste le indicó que los buscaría. Ahora bien, ante su inacción, le brindó a su sobrino el número de teléfono del licenciado Sánchez Reyes, pues tenía interés de obtener los documentos para lograr la inscripción en el Registro de la Propiedad. Asimismo, indicó que conocía sobre los intentos de comunicación de su sobrino mediante varios mensajes de texto que envió al promovido. Por otra parte, mencionó que no se sintió intimidada, coaccionada u obligada a firmar los documentos provistos por el promovido en la reunión de 24 de agosto de 2018.[8]

Como resultado de la investigación de la OPG, el 15 de noviembre de 2018, se le solicitó al promovente que presentara copia de la Escritura Núm. 14 otorgada por el licenciado Sánchez Reyes y de las notificaciones de las faltas emitidas por el Registro de la Propiedad.[9]

El 27 de noviembre de 2018, la OPG presentó el *Informe preliminar del Procurador General* donde recomendó remitir el caso a la Oficina de Inspección de Notarías (ODIN) por

---

[8] Como resultado de la entrevista, la señora Sánchez Vázquez especificó que la transacción jurídica recogida en el instrumento público no pudo ser inscrita en el Registro de la Propiedad por diferencias entre la cabida que surge del plano de inscripción que aprobó la Administración de Reglamentos y Permisos (ARPe) y la finca original que sería segregada. Además, indicó que el licenciado Sánchez Reyes le explicó que debía contratar un agrimensor para poder subsanar las escrituras, pero respondió que carecía del dinero para continuar los trámites necesarios para obtener la inscripción en el Registro de la Propiedad. *Informe final del Procurador General*, pág. 3.

[9] *Informe preliminar del Procurador General*, Anejo V.

ser la entidad que posee el peritaje requerido para la evaluación del desempeño notarial del promovido al autorizar la Escritura Núm. 14. Posteriormente, el 13 de diciembre de 2018 referimos la queja a la ODIN para que realizara la investigación y presentación de su *Informe* en sesenta (60) días.

### 1. Recomendación de la ODIN

Tras varios requerimientos de información por parte de la ODIN con respecto a la función notarial en relación con la Escritura Núm. 14, **el promovido admitió que "[n]o se hizo estudio de título en el presente caso".[10]** Posteriormente, el 17 de septiembre de 2019 la ODIN, a través de su Director, el Lcdo. Manuel E. Ávila de Jesús, presentó su *Informe*. Concluyó que el licenciado Sánchez Reyes infringió la Ley Notarial de Puerto Rico, *infra*, y el Código de Ética Profesional, *infra*. Específicamente, señaló que el promovido no fue diligente en el otorgamiento de la Escritura Núm. 14, ya que no cumplió con su deber de investigar las constancias del Registro de la Propiedad y con ello, omitió la función indelegable de asesorar y orientar a los otorgantes. Como resultado, impartió su fe pública notarial sobre una escritura en la que constaba una discrepancia en la cabida de la finca principal a ser segregada, lo cual impidió su inscripción en el Registro de la Propiedad. Ante ello, el promovido otorgó su fe pública

---

[10] *Informe*, Anejo VII.

notarial desconociendo las constancias del Registro de la Propiedad.

La ODIN concluyó que, por consiguiente, el letrado infringió el **Artículo 2** de la Ley Notarial de Puerto Rico, *infra*, así como los **Cánones 18**, **19 y 35** del Código de Ética Profesional, *infra*. De otra parte, añadió que el promovido no demostró haber realizado gestiones conducentes a la subsanación de las faltas notificadas durante el término de aproximadamente seis (6) años que tuvo para hacerlo, a fin de que la Escritura Núm. 14 ganara acceso al Registro de la Propiedad.

A base de lo anterior, la ODIN recomendó la suspensión del promovido del ejercicio de la notaría por el término máximo de tres (3) meses y, además, el apercibimiento de que debería observar en el futuro, mayor cuidado y diligencia en el proceso de investigación de las constancias que obran en el Registro de la Propiedad, con relación a los bienes inmuebles que sean objeto de los instrumentos públicos que autorice.

El 26 de septiembre de 2019, le proporcionamos un término de veinte (20) días al licenciado Sánchez Reyes para que se expresara sobre el *Informe* de la ODIN. Además, concedimos un término final de treinta (30) días a la OPG para someter su Informe final.

El 18 de octubre de 2019, el promovido presentó su contestación para aclarar que, como resultado de unas circunstancias personales, sometería el caso a base de la

prueba y las alegaciones que surgían del expediente hasta ese momento.

## 2. Recomendación de la OPG

Varios meses después, el 28 de octubre de 2019, la OPG remitió el *Informe final del Procurador General*. Manifestó que la ODIN consideró el desempeño notarial del promovido al autorizar la Escritura Núm. 14, por lo que, **estaría evaluando únicamente la falta de comunicación del promovido con el promovente, su negativa a entregar el expediente y su proceder ante la queja presentada.**

En cuanto a la comunicación y entrega del expediente, determinó que no existía controversia respecto a que la señora Sánchez Vázquez tenía un contrato con el promovido para tramitar el otorgamiento e inscripción de la Escritura Núm. 14. Asimismo, quedó establecido que el sobrino de la señora Sánchez Vázquez no contrató con el licenciado Sánchez Reyes ni compareció en la escritura. Por ello, la OPG concluyó que el promovido no tenía un deber ético de comunicación o entrega del expediente frente al promovente. Consecuentemente, determinó que el promovido **no** infringió los **Cánones 19 y 20** del Código de Ética Profesional, *infra*, ya que devolvió el expediente a la señora Sánchez Vázquez.

Con relación al proceder del abogado ante la queja, entendió que el letrado incumplió con los **Cánones 26 y 38** del Código de Ética Profesional, *infra*, al preparar y entregar a la señora Sánchez Vázquez dos (2) documentos que redactó a manuscrito con el fin de ser relevado de su responsabilidad profesional y para que la señora Sánchez

Vázquez se comprometiera a retirar la queja presentada por su sobrino.

Ahora bien, en cuanto a la sanción a imponerse, la OPG consideró que el promovido llevaba cuarenta (40) años ejerciendo la profesión sin sanción previa y que la señora Sánchez Vázquez manifestó que no se sintió coaccionada, intimidada ni obligada a firmar los documentos de relevo. Como resultado, la OPG recomendó el archivo de las violaciones a los Cánones 26 y 38 del Código de Ética Profesional, *infra*, relacionadas con el ejercicio de la abogacía, pero sugirió apercibirle que en un futuro fuera más cuidadoso y evitara incurrir en una conducta que pudiera ser contraria a los Cánones de Ética Profesional.

El 13 de noviembre de 2019, notificamos una *Resolución* en la que le concedimos un término de veinte (20) días al promovente y al licenciado Sánchez Reyes para expresarse sobre el *Informe final del Procurador General*.

Por su parte, el 2 de diciembre de 2019, el promovido presentó su *Comparecencia en cumplimiento de orden* mediante la cual explicó que la extensión del primer relevo que firmó la señora Sánchez Vázquez se limitaba a la continuación del trámite ante la ARPe y con ello, la corrección de la cabida en la escritura. En cuanto al segundo relevo, alegó que no era una obligación exigible, ya que surgió por iniciativa de la señora Vázquez Sánchez. Puntualizó que el origen de la queja fue que no pudieron localizarlo en varias ocasiones. Reiteró que el señor Morales González carecía de legitimación activa para presentar la queja de autos.

Además, el licenciado Sánchez Reyes señaló que el promovente no solicitó la sanción como remedio.

Tras exponer el marco fáctico del presente caso, procedemos a enmarcar la controversia en el derecho aplicable.

## II

El debido proceso de ley "le impone al Estado la obligación de garantizar que la interferencia con el interés propietario o libertario del individuo se realice mediante un procedimiento justo y equitativo que respete la dignidad de los individuos". *In re* Martínez Almodóvar, 180 DPR 805, 821 (2011); Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 DPR 881, 887-888 (1993).

En *In re* Ruffalo, 390 US 544, 550 (1968), el Tribunal Supremo de Estados Unidos reconoció, expresamente, que durante los procedimientos disciplinarios, un abogado tiene el derecho constitucional al debido proceso de ley. Los abogados poseen un interés propietario en el ejercicio de la profesión legal. *In re* Colón Hernández, 189 DPR 275, 281 (2013) (citando a *In re* Ríos Ríos, 175 DPR 57, 75 (2008)). Así, son acreedores de las garantías de la vertiente procesal de un debido proceso de ley en los procedimientos disciplinarios en los que se encuentra en juego su licencia. Íd.

Al evaluar el debido proceso de ley en asuntos disciplinarios, determinamos que la práctica de enmendar tácitamente para añadir cargos que no se incluyeron en la querella original a base de la prueba que se presenta durante

el procedimiento viola el debido proceso de ley del abogado. *In re* Pérez Riveiro, 180 DPR 193, 200 (2010). Sin embargo, cuando surge una conducta adicional durante el proceso disciplinario, se podrá atender en el mismo procedimiento condicionado a que se le haya salvaguardado al abogado el debido proceso de ley. *In re* Martínez Almodóvar, *supra*, págs. 825-826.

De manera que, hemos expresado que el debido proceso de ley se salvaguarda siempre que se le provea al abogado la oportunidad de responder y defenderse de las teorías que fundamenten los cargos imputados y notificados adecuadamente. Íd., pág. 825; *In re* Pérez Riveiro, *supra*, pág. 200.

Cónsono con lo anterior, la Regla 14 (e) del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, dispone que:

> Una vez el Tribunal reciba la recomendación del Procurador o Procuradora General o del Director o Directora de la Oficina de Inspección de Notarías, podrá ordenar el archivo y sobreseimiento de la queja, ordenar que se amplíe la investigación de la queja o someter el asunto a uno de sus Jueces o Juezas para la determinación de causa, quien informará su criterio y recomendaciones al Pleno. El Tribunal podrá imponer las sanciones que correspondan sin necesidad de trámites ulteriores cuando surjan de la propia contestación hechos que lo justifiquen. Luego de completado el trámite anterior, el Tribunal podrá ordenar al Procurador o Procuradora General que presente la querella correspondiente.

En *In re* Colorado, 149 DPR 780, 782 (1999), aclaramos que "la recomendación que hace el Procurador General no limita nuestra facultad disciplinaria si encontramos, contrario a su criterio, que el abogado incurrió en conducta antiética". Íd. Además, añadimos que carece de mérito

cualquier contención de que "estamos impedidos de ejercitar nuestra facultad disciplinaria, porque el Procurador General no recomendó imposición de sanción alguna" en contra del abogado pues "nuestro cuerpo jurisprudencial y reglamentario reconoce esa facultad, incluso *sua sponte*". Íd. Además, establecimos que conforme con la Regla 14 del Reglamento del Tribunal Supremo, *supra*, podemos imponer las sanciones que correspondan, sin necesidad de trámite ulterior, cuando de la propia contestación surjan hechos que lo justifiquen.

### A. Incumplimiento del Artículo 2 de la Ley Notarial de Puerto Rico

El notario debe ejercer su función con extremo cuidado, esmero y celo profesional. *In re* Pagani Padró, 198 DPR 812, 820 (2017); *In re* Maldonado Maldonado, 197 DPR 802, 809 (2017); *In re Pacheco Pacheco*, 192 DPR 553, 562 (2015); *In re* Ayala Oquendo, 185 DPR 572, 580 (2012); *In re* Belén Trujillo, 184 DPR 793, 801 (2012).

Esto responde a que el notario está obligado a cumplir estrictamente con la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, 4 LPRA sec. 2001 *et seq.*, el Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, y los Cánones del Código de Ética Profesional, 4 LPRA Ap. IX. *In re* García Cabrera, 201 DPR 902, 918 (2019); *In re* Palmer Ramos, 195 DPR 245, 254-255 (2016); *In re* Toro González II*, 193 DPR 877, 889 (2015); *In re* Vargas Velázquez*, 193 DPR 681, 693 (2015). Conforme a ello, el incumplimiento con tales preceptos normativos lo expone a sanciones

disciplinarias. *In re* Ayala Oquendo, *supra*; *In re* Montalvo Guzmán, 164 DPR 806, 810 (2005).

El Artículo 2 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2002, consagra el principio de la fe pública notarial. Así, dispone lo siguiente:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. Íd.

La función que ejerce el notario va más allá de actuar como un legalizador de firmas autómata, ya que posee el deber de verificar que el instrumento público cumpla con todas las formalidades de la ley, que es legal y verdadero, y finalmente, que es una transacción legítima y válida. ´*In re* Peña Osorio, 202 DPR 779, 789 (2019); *In re* García Cabrera*, supra*, pág. 919 (citando a *In re* Torres Alicea*, 175 DPR 456, 460 (2009)). Asimismo, como parte de su deber de informar, el notario se presenta en calidad de jurista. *In re* Martínez Sotomayor, 189 DPR 492, 500 (2013). Ello, significa que el notario tiene el **ineludible deber** de ilustrar a los otorgantes para lograr que éstos concurran al acto notarial en un estado de **conciencia informada**. *In re* García Cabrera, *supra*, pág. 923; *In re* Pagani Padró, *supra*, pág. 821; *In re* Maldonado Maldonado*, supra*, pág. 810;

*In re* Toro González II, *supra*, pág. 892; *In re* Belén Trujillo, *supra*, pág. 804; *In re* Torres Alicea, *supra*, págs. 460-461. A su vez, como una **obligación indeclinable**, el notario debe "propiciar y cerciorarse de ese estado de conciencia informada supliendo las explicaciones, aclaraciones y advertencias en todo caso en que hagan falta para lograr el consentimiento enterado de los otorgantes". *In re* Ayala Oquendo, *supra*, pág. 582.

Los notarios ejercen una función pública mediante la cual dan fe y autentican, de acuerdo con las leyes, los negocios jurídicos y los actos o sucesos extrajudiciales que se realizan ante ellos. *In re* García Cabrera, *supra*, pág. 918; *In re* Maldonado Maldonado, *supra*, pág. 809. El referido compromiso de los notarios va atado al deber de diligencia comprendido en el Canon 18 del Código de Ética Profesional, *supra*.

**B. Incumplimiento con los Cánones del Código de Ética Profesional**

**1. Canon 18 (Competencia del abogado y consejo al cliente)**

El Canon 18 del Código de Ética Profesional (Canon 18), *supra*, requiere que los abogados y notarios rindan una labor idónea de competencia y diligencia. *In re* García Cabrera, *supra*, págs. 924-925; *In re* Peña Osorio, *supra*, pág. 790; *In re* Maldonado Maldonado, *supra*, pág. 812. Así, el notario demuestra que posee los conocimientos jurídicos necesarios durante la ejecución de sus funciones. *In re* Torres Rivera, 2020 TSPR 23, 204 DPR ___ (2020). Por ello, el desconocimiento de las normas

jurídicas al ejercer la profesión vulnera la naturaleza misma del notariado e implican una violación al Canon 18 del Código de Ética Profesional, *supra*. *In re* García Cabrera, *supra*, pág. 925 esc. 50 (citando a *In re* Vargas Velázquez, *supra*, pág. 693).

Del mismo modo, el incumplimiento del deber de diligencia que establece el Canon 18 del Código de Ética Profesional, *supra*, se vincula con el deber de ilustrar a las partes con explicaciones, aclaraciones y advertencias necesarias para su entendimiento al aplicar su conocimiento sobre el derecho positivo con la jurisprudencia y a su vez, verifica la legalidad y validez de los referidos instrumentos públicos. *In re* García Cabrera, *supra*, pág. 919 esc. 13 (citando a *In re* Torres Alicea*, supra*).

El notario tiene el deber de consignar las advertencias en las escrituras públicas para brindar "a los otorgantes las informaciones, aclaraciones y advertencias necesarias para que comprendan el sentido, así como los efectos y consecuencias del negocio, y se den cuenta de los riesgos que corren en celebrarlo". *In re* Toro González II, *supra*, pág. 888. Ello, como parte de los deberes que ejerce al momento de otorgar una escritura. *In re* Davidson Lampón, 159 DPR 448, 461 (2003) (citando a Chévere v. Cátala, 115 DPR 432, 438 (1984)). De este modo, el Artículo 15(f) de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2033(f), establece que el notario consignará en la escritura pública las advertencias pertinentes al negocio jurídico conforme a su juicio prudente.

En varias ocasiones hemos reiterado que el notario no puede desconocer el estado de las constancias del Registro de la Propiedad al ejercer su función principal como custodio de la fe pública. *In re* Palmer Ramos, *supra*, pág. 257; *In re* Torres Alicea, *supra*.

En este contexto, cuando el notario asesora sobre la idoneidad de que se efectúe un estudio de título, en *In re* Maldonado Maldonado*, supra*, pág. 811, ratificamos lo siguiente:

> [P]ara que se logre el consentimiento informado de los otorgantes, **el notario debe advertirles sobre la conveniencia y necesidad de realizar un estudio de título.** Ello brinda a los otorgantes la oportunidad de conocer la situación registral de la propiedad: entre otras cosas, quién consta como su titular registral, las cargas y los gravámenes que afectan la propiedad. Solo de esa manera se puede garantizar un consentimiento informado por parte de éstos. **Ahora bien, en el caso de que los otorgantes no quieran que se realice el estudio de título, el notario debe consignar en la escritura que les advirtió sobre la necesidad y conveniencia de que sí se hiciera. El incumplimiento con lo mencionado constituye una violación al imperativo de custodiar la fe pública notarial, con independencia de que esa haya sido o no la intención del notario.** (Énfasis nuestro). Íd.

De igual forma, deberá advertir que el estudio de título no asegura que hayan sido inscritas otras cargas presentadas con posterioridad a la fecha en que se realizó el mismo. *In re* Torres Alicea, *supra*, pág. 461.

Anteriormente, hemos sido enfáticos en cuanto a la importancia de la investigación que debe realizar el notario sobre los antecedentes registrales de la propiedad antes del otorgamiento de la escritura, ya que, al omitir tal

investigación, incumple con su deber de informar adecuadamente a los otorgantes, lo que configura una infracción a la fe pública notarial. *In re* López Maldonado, 130 DPR 863, 865-866 (1992).[11]  Por consiguiente, hemos determinado que la falta de investigación adecuada y responsable constituye una violación a la Ley Notarial de Puerto Rico, *supra*.  Íd.  Véanse, además: *In re* Pagani Padró, *supra*, pág. 821; *In re* Aponte Berdecía, 161 DPR 94, 103-104 (2004); *In re* Ortiz Gutiérrez, 153 DPR 271, 277-278 (2001).

Por otro lado, hemos reconocido que las partes pueden establecer un relevo de responsabilidad del notario sobre las advertencias cuando el estudio de título es obligación de un tercero.  Ahora bien, es meritorio aclarar que las advertencias no eximen al notario de su deber primordial de salvaguardar la fe pública notarial y otorgar instrumentos jurídicamente eficaces y legales. *In re* Torres Rivera*, supra*.  De manera que, "establecer las advertencias correspondientes en la escritura no puede servir como subterfugio para autorizar transacciones jurídicas sin cabida en nuestro ordenamiento". *In re* Torres Rivera*, supra*.[12]

---

[11]  En *In re* López Maldonado, 130 DPR 863, 866 (1992), el notario incumplió con el deber de realizar un estudio de título sobre las constancias del Registro de la Propiedad antes de autorizar el otorgamiento de una escritura, dando fe de hechos que no coincidían con la realidad registral.

[12]  Nuestro ordenamiento no impone la obligación al notario sobre la presentación de la Escritura en el Registro de la Propiedad, ya que esa obligación adicional solo surge por vínculo contractual ajeno a la responsabilidad ordinaria e inherente del ejercicio de la notaría. *In re* García Cabrera, 201 DPR 902, 926 (2019); *In re* Avilés, Tosado, 157 DPR 867, 893 (2012).

Por todo lo anterior, hemos decretado que infringe el Canon 18 del Código de Ética Profesional, *supra,* el notario que presenta ante el Registro de la Propiedad una escritura sin corroborar las constancias registrales, incumpliendo, de esa forma, con su deber de verificar si el instrumento público posee defectos que impidan su inscripción en el Registro de la Propiedad. *In re* García Cabrera, *supra*, págs. 925-926. Esto se debe a que la referida conducta certifica el desconocimiento del notario de las normas jurídicas relativas a los negocios jurídicos autorizados. *In re* Maldonado Maldonado*, supra*, pág. 813; *In re* Vargas Velázquez, *supra*, págs. 694-695; *In re* Pacheco Pacheco*, supra*, pág. 564. Por tanto, la notificación de faltas que impiden la inscripción en el Registro de la Propiedad por parte del Registrador, impone al notario el deber de atenderlas de manera diligente, ya que tales faltas inciden sobre los derechos de las partes otorgantes en el negocio jurídico autorizado. Conforme a ello, es pertinente mencionar que el Artículo 63 de la Ley Hipotecaria y del Registro de la Propiedad, Ley Núm. 198 de 8 de agosto de 1979, 30 LPRA sec. 2266, -vigente al momento de otorgar la escritura- disponía que:

> El notario o funcionario que por su falta cometiere alguna omisión que impida inscribir el acto o contrato, conforme a lo dispuesto en la ley, subsanará prontamente, al ser requerido, extendiendo a su costo un nuevo documento, si fuere posible e indemnizando en todo caso a los interesados de los perjuicios que les ocasionen su falta. Íd.

Asimismo, el Artículo 240 de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210-2015, 30 LPRA sec. 6392, establece lo siguiente:

> El notario o funcionario que por su falta cometa alguna omisión que impida inscribir el acto o contrato contenido en el documento presentado, conforme lo dispuesto en la ley, subsanará prontamente y a su costo al ser requerido mediante notificación. De ser necesario y posible, extenderá un nuevo documento.

> Todo notario cuyo documento sea notificado en tres ocasiones por los mismos defectos sin que se corrijan los mismos, podrá ser referido por el Registrador vía correo electrónico a la Oficina de Inspección de Notarías para la acción correspondiente. Dicho referido se efectuará simultáneamente con la tercera notificación. Íd.

## 2. Canon 19 (Información al cliente)

Por otro lado, el Canon 19 del Código de Ética Profesional(Canon 19), *supra*, dispone, en lo que atañe a la conducta que nos compete, que "[e]l abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado", lo que incide en la obligación de información que "constituye un elemento imprescindible en la relación fiduciaria que caracteriza el vínculo abogado-cliente". En consecuencia, cuando el notario no advierte a los otorgantes sobre las circunstancias del negocio jurídico y sus efectos, infringe también el Canon 19 del Código de Ética Profesional, *supra*. A manera de ejemplo, en *In re* Maldonado Maldonado, *supra*, pág. 818, concluimos que un letrado incumplió con el Canon 19 del Código de Ética Profesional, *supra*, al no mantener informada a la quejosa sobre el estado

de la presentación de una escritura. De modo que, el notario debe "mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado". *In re* García Cabrera, *supra*, pág. 928. Por consiguiente, el notario tiene la responsabilidad de informar a sus clientes sobre las gestiones realizadas conforme al desarrollo de la encomienda por la que fue contratado. Íd. Esta obligación de mantener informado a los clientes es distinta y separada del deber de diligencia que se exige a los miembros de la profesión. Íd.

De manera análoga, en *In re* Rodríguez Mercado, 133 DPR 208 (1993) determinamos que un abogado faltó a sus deberes éticos, ya que se obligó a preparar unas escrituras y obtener su inscripción en el Registro de la Propiedad, pero, a pesar de varios intentos realizados por la querellante, ésta no logró comunicarse con el licenciado. Ello, impidió que le fueran informadas las gestiones de presentación e inscripción en el Registro de la Propiedad, lo que mantuvo inconcluso dicho trámite por más de siete (7) años. Consecuentemente, concluimos que el letrado incumplió con el Canon 19 del Código de Ética Profesional, *supra*.

### 3. Canon 26 (Derechos y limitaciones en relación con clientes)

El Canon 26 del Código de Ética Profesional (Canon 26), *supra*, establece que ningún abogado está obligado a representar a determinado cliente y es su derecho aceptar o rechazar representarle legalmente. En ese sentido, establece que es altamente impropio aconsejar transacciones

o actos que sean contrarios a la ley, presentar pleitos viciosos o falsas defensas con la justificación de actuar conforme a las instrucciones de su cliente. Advierte que el abogado debe obedecer siempre a su propia conciencia y no a la de su cliente. Además, establece que **resulta "impropio de un abogado relevarse de responsabilidad por actos u omisiones negligentes en su gestión profesional"**. (Énfasis suplido). *In re* Franco Rivera, 2019 TSPR 242, 203 DPR __ (2019).

De manera que, hemos expresado que un abogado puede aceptar su responsabilidad y transigir las diferencias con el quejoso. *In re* Ojeda Martínez, 185 DPR 1068, 1081 (2012); *In re* Ríos Ríos, 175 DPR 57, 76 (2008). Asimismo, la admisión de responsabilidad civil y resarcimiento del abogado al cliente son factores atenuantes. *In re* Ojeda Martínez, *supra*. Sin embargo, **este principio ético busca evitar que el abogado "limite, se exonere o evada contractualmente o de algún otro modo, su responsabilidad profesional"**. (Énfasis nuestro). *In re* Franco Rivera, *supra*; *In re* Ríos Ríos, *supra*, pág. 76. Por esta razón, **el abogado no puede condicionar una transacción de una acción civil en daños por mala práctica profesional a que un cliente retire o no presente una queja disciplinaria en su contra.** Íd. Consecuentemente, nuestra jurisdicción disciplinaria no se ve limitada con este tipo de acción. Íd.

Cabe resaltar que la referida actuación incide sobre el deber que tiene el abogado de "enfrentar el proceso sobre conducta profesional con la honra y el sacrificio que

conlleva la profesión de la abogacía, [ya que] en su día, tendrá la oportunidad de defenderse y persuadir a todas aquellas personas relacionadas con el proceso adjudicativo de quejas sobre conducta profesional". *In re* Ojeda Martínez, *supra*, pág. 1083.

### 4. Canon 35 (Sinceridad y honradez)

En lo pertinente, el Canon 35 del Código de Ética Profesional (Canon 35), *supra*, dispone que: "[l]a conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada". Íd. Como se puede colegir, el estudio de título antes de otorgar el instrumento público es un elemento esencial de la responsabilidad del notario. Más aún, cuando faltar a la verdad al consignar hechos falsos en una escritura infringe la fe pública notarial por el desconocimiento del estado registral del bien inmueble. Por consiguiente, la falta de investigación adecuada y responsable constituye también una infracción del Canon 35 del Código de Ética Profesional, *supra*. *In re* García Cabrera, *supra*, pág. 936; *In re* Pagani Padró, *supra*, pág. 825; *In re* Maldonado Maldonado, *supra*, pág. 810 esc. 15; *In re* Ayala Oquendo, *supra*, pág. 583. Así, el notario que asevere cualquier hecho en un instrumento público que no concuerde con la verdad, infringe la fe pública notarial que, a su vez, constituye una violación al Canon 35 del Código de Ética Profesional, *supra*, independientemente de si hubo intención de faltar a

la verdad. *In re* Torres Villanueva, 168 DPR 185, 191 (2006);

*In re* Collazo Sánchez, 159 DPR 769, 773-774 (2003).

### 5. Canon 38 (Preservación del honor y dignidad de la profesión)

El Canon 38 del Código de Ética Profesional (Canon 38), *supra*, puntualiza que los dos (2) valores principales con los que debe cumplir un abogado son: la dignidad y el honor al ejercer la abogacía y en su vida privada. Asimismo, instituye el deber de evitar hasta la apariencia de conducta profesional impropia. Por consiguiente, todo letrado debe actuar de forma escrupulosa y guiado por un alto sentido de responsabilidad considerando la función social que ejerce y la institución que representa. *In re* Fingerhut Mandry, 196 DPR 327, 333 (2016); *In re* Nieves Nieves, 181 DPR 25, 45 (2011).

### C. Sanción

En cuanto a la sanción disciplinaria por el comportamiento exhibido, debemos considerar los factores siguientes: (1) la reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente; (8) si demostró aceptación o arrepentimiento sincero por la conducta que le fue imputada, y (9) otros atenuantes o agravantes que surjan de los hechos. *In re* López Santiago, 199 DPR 797, 818

(2018); *In re* Maldonado Maldonado, *supra*, pág. 818; *In re* Rivera Grau, 196 DPR 522, 539 (2016).

Con el fin de evitar la arbitrariedad y promover una reglamentación ética uniforme y coherente, es necesario tratar las faltas semejantes del mismo modo. *In re* Rivera Nazario, 193 DPR 573, 587-588 (2015); *In re* Díaz Alonso, Jr., 115 DPR 755, 760-761 (1984). Esto significa que, al decidir la sanción disciplinaria, es forzoso ponderar las sanciones que hemos impuesto a otros miembros de la profesión en infracciones disciplinarias análogas, tras llevar a cabo la revisión de los precedentes. *In re* Rivera Nazario, *supra*; *In re* De León Rodríguez, 190 DPR 378, 396-397 (2014).

Ahora bien, al momento de imponer la medida disciplinaria, debemos reconocer que cada uno de los casos presenta circunstancias únicas y determinantes que, en ocasiones, justifican que nos distanciemos de las sanciones disciplinarias otorgadas anteriormente ante situaciones similares. *In re* Villalba Ojeda, 193 DPR 966, 982-983 (2015). "Lo importante es que cuando nos apartemos de los precedentes similares, brindemos una explicación satisfactoria que justifique nuestro proceder". Íd., pág. 983.

### III

#### A. Parte promovente

Como cuestión de umbral, nos corresponde evaluar el planteamiento de falta de legitimación activa para la presentación de la queja por parte del promovente. Veamos.

En cuanto al concepto de "parte promovente", en *In re MMT, MITA y LST*, 191 DPR 668 (2014), determinamos que "en el contexto de los procesos disciplinarios, se refiere a aquella persona que ha impulsado la acción disciplinaria y que, a su vez, tiene conocimiento personal y legitimación activa con relación a la queja". *Íd.*, pág. 675. Asimismo, se ha especificado que "es aquella que promueve o impulsa una acción disciplinaria por haber estado directamente involucrada en los sucesos que motivaron la presentación de una [q]ueja". *Íd.*, pág. 677 (Pabón Charneco, J., Opinión de conformidad).

Según surge del expediente, la Escritura Núm. 14 nunca logró acceso al Registro de la Propiedad. Ante ese escenario, la familia de la señora Sánchez Vázquez le delegó la tarea de contactar al promovido, solicitar el expediente y tramitar la inscripción con otro abogado. En cumplimiento con lo anterior, la señora Sánchez Vázquez se comunicó con el promovido, quien le respondió que buscaría el expediente del caso. Ahora bien, el licenciado Sánchez Reyes incumplió nuevamente con su deber, lo que provocó que la señora Sánchez Vázquez buscara apoyo en su sobrino, quien tenía interés en resolver el asunto y, además, conocía de las faltas que impidieron la inscripción del instrumento público y de la indiferencia del letrado para corregirlas. Consecuentemente, el señor Morales González obtuvo la información que le brindó su tía para contactar al licenciado Sánchez Reyes. Sin embargo, los intentos de comunicación para solicitar la devolución del expediente

fueron infructuosos. Como resultado de lo anterior, el promovente presentó la queja.

A base de los hechos detallados, concluimos que el señor Morales González estaba facultado para presentar la presente queja (AB-2018-198), pues tiene conocimiento personal de lo ocurrido por haber sido una parte involucrada directamente al suceso que originó la solicitud de devolución del expediente, que ante la falta de diligencia del licenciado Sánchez Reyes para con su tía lo motivó a impulsar el proceso disciplinario en su contra.

### B. Conducta contraria al Artículo 2 de la Ley Notarial de Puerto Rico y los Cánones 18, 19 y 35 del Código de Ética Profesional en el ejercicio de la notaría

Debemos determinar **primeramente** si el licenciado Sánchez Reyes, al ejercer su **función notarial**, infringió el Artículo 2 de la Ley Notarial de Puerto Rico, *supra*, y los Cánones 18, 19 y 35 del Código de Ética Profesional, *supra*.

En resumen, el licenciado Sánchez Reyes, en su función como notario, se obligó a autorizar la Escritura Núm. 14. A pesar de ello, no mostró la diligencia debida al ejercer su encomienda e incluso admitió que no revisó las constancias del Registro de la Propiedad antes de otorgar la Escritura Núm. 14. Por consiguiente, falló al otorgar un instrumento público con defectos que impedían su inscripción en el Registro de la Propiedad.

El licenciado Sánchez Reyes ignoró las circunstancias registrales de la finca Núm. 1105 al momento de otorgar la

Escritura Núm. 14, ya que surge del expediente ante nuestra consideración que en el Registro de la Propiedad constaban varios instrumentos públicos previos que alteraron su cabida.[13] De esta forma, el promovido incumplió con su deber de conocer el estado registral de la finca o propiedad al ejercer su función como custodio de la fe pública notarial. Asimismo, el promovido incumplió con la obligación indeclinable de suplir el estado de conciencia informada al momento de otorgar el instrumento público y faltó al deber de brindar la información completa a su cliente sobre el estado de la presentación de la Escritura Núm. 14.[14]

Es pertinente mencionar que el promovido prescribió las advertencias legales en la Escritura Núm. 14. Sin embargo, las advertencias no eximen al notario de su deber primordial de salvaguardar la fe pública notarial.

A base de lo anterior, concluimos que el abogado autorizó la Escritura Núm. 14 con desconocimiento sobre las constancias del Registro de la Propiedad y, al amparo de la fe pública notarial, aseveró incorrectamente el tamaño de

---

[13]    *Informe*, págs. 9-10; Anejo XV.

[14]    En cuanto al deber de presentación de documentos en el Registro de la Propiedad es meritorio resaltar que la Oficina de Inspección de Notarías (*ODIN*) concluyó en su *Informe* lo siguiente:

> [D]el expediente de la [q]ueja que se encuentra ante nuestra consideración, no surge prueba documental clara, robusta y convincente de que el [p]romovido haya incurrido en alguna infracción al ordenamiento notarial o ético con respecto a dicho asunto en lo que al ejercicio de la profesión de la notaría se refiere. Los trámites relacionados a la presentación de documentos en el [Registro de la Propiedad], de ordinario, no forman parte de las responsabilidades inherentes al ejercicio de la profesión de la notaría. Ahora bien, cuando el notario asume dicha obligación contractualmente, tiene el deber [d]e ser diligente. Íd., pág. 17 esc. 23.

la cabida de la finca principal que segregaría en la Escritura Núm. 14. Así, afirmó un hecho que no le constaba ni concordaba con la realidad. Por tanto, incurrió en una violación del principio de la fe pública notarial dispuesto por **el Artículo 2 de la Ley Notarial de Puerto Rico**, *supra*, **y también de los Cánones 18, 19 y 35 del Código de Ética Profesional**, *supra*.

### C. Conducta contraria a los Cánones 26 y 38 del Código de Ética Profesional en el ejercicio de la abogacía

De otra parte, hemos reconocido que en los trámites disciplinarios los abogados son acreedores de las garantías de un debido proceso de ley. Asimismo, hemos indicado que la recomendación de la OPG no limita nuestra facultad disciplinaria si encontramos que, contrario a su criterio, el abogado incurrió en conducta antiética. Por consiguiente, en el presente caso nos corresponde evaluar el incumplimiento del promovido con los Cánones 26 y 38 del Código de Ética Profesional, *supra*. Según hemos señalado, en el caso de epígrafe, el promovido no se encontraba ajeno a las alegaciones en su contra, ya que participó y expuso sus argumentos durante el trámite disciplinario hasta su *Comparecencia en cumplimiento de orden* en respuesta al *Informe final del Procurador General* mediante la cual fundamentó que su actuación surgió por iniciativa de la señora Vázquez e intentó limitar la extensión del primer

relevo.[15] Ello, a raíz de la conducta desplegada por el licenciado Sánchez Reyes el 24 de agosto de 2018, cuando se reunió con la señora Sánchez Vázquez y procuró que le firmara dos (2) documentos.

En detalle, por medio del primer documento, relevó al licenciado Sánchez Reyes de toda responsabilidad con respecto al caso y, mediante la firma del segundo, la señora Sánchez Vázquez se comprometió a retirar la queja presentada por su sobrino. Esa conducta por parte del letrado constituyó un intento de evadir un proceso disciplinario ya comenzado mediante un mecanismo ilegítimo que pretendía liberarlo de responsabilidad profesional.

Claramente, el letrado incumplió con el Canon 26 del Código de Ética Profesional, *supra*, que categóricamente clasifica como conducta impropia que un abogado se releve de responsabilidad por actos u omisiones negligentes en su gestión profesional. El promovido incurrió también en la violación del Canon 38 del Código de Ética Profesional, *supra*, pues la referida acción, denota una conducta impropia que tiene un efecto lesivo en la honra de la profesión.

### D. Sanción

En cuanto a la sanción, acogimos parcialmente las recomendaciones de la ODIN y la OPG al considerar que las

---

[15] Cabe resaltar que el 17 de septiembre de 2018, el licenciado Sánchez Reyes presentó su contestación inicial a la queja en la que incluyó los documentos de los relevos de responsabilidad que suscribió la señora Sánchez Vázquez. Asimismo, el 18 de octubre de 2019, el promovido presentó su contestación al *Informe* de la ODIN y sometió el caso a base de la prueba y de las alegaciones que surgían del expediente hasta ese momento. Por último, el 2 de diciembre de 2019, compareció ante este Tribunal y se expresó sobre el *Informe final del Procurador General*.

omisiones del licenciado Sánchez Reyes en su función notarial constituyeron patentes violaciones al Artículo 2 de la Ley Notarial de Puerto Rico, *supra*, y a los Cánones 18, 19 y 35 del Código de Ética Profesional, *supra*.

Ahora bien, por las razones previamente esbozadas decretamos que, el promovido a su vez, incumplió con los Cánones 26 y 38 del Código de Ética Profesional, *supra*, al intentar ser relevado de su responsabilidad por la conducta desplegada.

En la evaluación del presente caso consideramos como atenuantes que es la primera queja presentada en contra del promovido por su desempeño profesional como notario durante cuarenta (40) años y que la señora Sánchez Vázquez expresó que no se sintió intimidada, coaccionada u obligada a firmar los documentos que incluían el relevo, provistos por el promovido.

De otra parte, consideramos como agravantes la falta de arrepentimiento exhibida por el promovido, quien tampoco aceptó su falta ni realizó gestión adicional para lograr la inscripción de la Escritura Núm. 14 en el Registro de la Propiedad durante los años anteriores a la entrega del expediente a la señora Sánchez Vázquez.

Por tanto, corresponde imponer al licenciado Sánchez Reyes **una suspensión de tres (3) meses del ejercicio de la abogacía y la notaría.**[16]

---

[16] Véanse, por ejemplo: *In re* Torres Rivera, 2020 TSPR 23, 204 DPR __ (2020); *In re* Franco Rivera, 2019 TSPR 242, 203 DPR __ (2019); *In re*

**IV**

Por los fundamentos que anteceden, ordenamos la suspensión de la abogacía y la notaría del señor Sánchez Reyes por tres (3) meses.

Como consecuencia, se le impone el deber de notificar a todos sus clientes de su inhabilidad para continuar representándolos y devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos, e informar inmediatamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente. Asimismo, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, dentro del término de treinta (30) días, contado a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.

De otra parte, se le ordena al Alguacil de este Tribunal incautar inmediatamente la obra y el sello notarial del señor Sánchez Reyes y entregarlos al Director de la ODIN para el correspondiente examen e informe. Además, en virtud de esta suspensión, la fianza que garantiza las funciones notariales queda automáticamente cancelada. No obstante, la fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que estuvo vigente.

Se dictará Sentencia de conformidad.

---

Maldonado Maldonado, 197 DPR 802 (2017); *In re* Collado Ruiz, 195 DPR 705 (2016); *In re* Ojeda Martínez, 185 DPR 1068 (2012); *In re* Belén Trujillo, 184 DPR 793 (2012); *In re* Muñoz Fernós, 184 DPR 679 (2012).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Abelardo Sánchez Reyes          AB-2018-198          Conducta
                                                     Profesional

SENTENCIA

En San Juan, Puerto Rico a 23 de julio de 2020.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, decretamos la suspensión del Lcdo. Abelardo Sánchez Reyes del ejercicio de la abogacía y la notaría por el término de tres (3) meses.

El señor Sánchez Reyes deberá notificar a todos sus clientes de su inhabilidad para continuar representándolos y devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos, e informar inmediatamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente. Asimismo, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, dentro del término de treinta (30) días, contado a partir de la notificación de la Opinión *Per Curiam* que antecede y de esta Sentencia.

Se le ordena al Alguacil de este Foro incautar inmediatamente la obra y el sello notarial del señor Sánchez Reyes y entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe. Además, en virtud de esta suspensión, la fianza que garantiza las funciones

notariales queda automáticamente cancelada. No obstante, la fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que estuvo vigente.

Notifíquese esta Opinión *Per Curiam* y Sentencia por medio del correo electrónico registrado en el Registro Único de Abogados y Abogadas de Puerto Rico (RUA). El recibo de la notificación será confirmado por la vía telefónica.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez está conforme en parte y disiente en parte haciendo constar la expresión siguiente:

> La Jueza Presidenta Oronoz Rodríguez suspendería al Lcdo. Abelardo Sánchez Reyes únicamente del ejercicio de la notaría. Respecto a su conducta no relacionada con su desempeño notarial, acogería la recomendación de la Oficina del Procurador General de archivar la queja, previo apercibimiento de que en el futuro debe ser más cuidadoso y evitar incurrir en conducta que pudiera ser contraria al Código de Ética Profesional.

La Jueza Asociada señora Pabón Charneco disiente y hace constar la siguiente expresión:

> La Jueza Asociada señora Pabón Charneco disiente del curso tomado por una Mayoría de este Tribunal y sólo suspendería al Lcdo. Abelardo Sánchez Reyes de la práctica de la notaría. El licenciado Sánchez Reyes lleva cuarenta (40) años ejerciendo la profesión de la abogacía sin haber tenido una sanción previa. Surge del *Informe Final* presentado por la Oficina del Procurador General que la Sra. Irma Sánchez Vázquez manifestó que no se sintió coaccionada, intimidada ni obligada a firmar los documentos de relevo provistos por el letrado.

La Juez Asociada señora Rodríguez Rodríguez disiente sin Opinión escrita. Los Jueces Asociados señor Kolthoff Caraballo y señor Colón Pérez no intervinieron.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo